**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

DIANE O'NEIL,
Plaintiff-Appellee,

v.                                                          No. 96-2460

HILTON HEAD HOSPITAL,
Defendant-Appellant.

Appeal from the United States District Court
for the District of South Carolina, at Beaufort.
Solomon Blatt, Jr., Senior District Judge.
(CA-96-1933-9-8)

Argued: May 8, 1997

Decided: June 13, 1997

Before WILKINSON, Chief Judge, and RUSSELL and
MICHAEL, Circuit Judges.

_____

Reversed and remanded by published opinion. Chief Judge Wilkinson
wrote the opinion, in which Judge Russell and Judge Michael joined.

_____

**COUNSEL**

**ARGUED:** Brian S. McCoy, ROBINSON, BRADSHAW & HIN-
SON, P.A., Rock Hill, South Carolina, for Appellant. Samuel Stanton
Svalina, SVALINA, RICHARDSON & LARSON, Beaufort, South
Carolina, for Appellee. **ON BRIEF:** Benjamin A. Johnson, Sarah B.
Boucher, ROBINSON, BRADSHAW & HINSON, P.A., Rock Hill,
South Carolina, for Appellant. J. Brent Kiker, SVALINA, RICH-
ARDSON & LARSON, Beaufort, South Carolina, for Appellee.

**OPINION**

WILKINSON, Chief Judge:

Diane O'Neil sued her former employer, Hilton Head Hospital, alleging that she had been discharged in violation of the Family and Medical Leave Act ("FMLA"). Citing an arbitration agreement signed by O'Neil, the hospital moved that the suit be stayed pending arbitration as required by section 3 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 3. The district court denied this motion.

We reverse. The FAA embodies a strong federal policy in favor of arbitration, and, accordingly, there is a strong presumption in favor of the validity of arbitration agreements. The district court erred when it found that the hospital was obligated to provide O'Neil with continued employment in order for the arbitration clause to be effective. We remand the case to the district court with directions that it be stayed pending arbitration.

I.

Diane O'Neil began working for Hilton Head Hospital as a respiratory therapist on January 15, 1991. On June 12, 1994, O'Neil began a leave of absence from the hospital, which she alleges was medical leave pursuant to the FMLA. While O'Neil was on leave, Hilton Head Hospital was acquired by American Medical International ("AMI"). During her leave, on August 19, 1994, O'Neil signed an acknowledgment form recognizing receipt of an AMI Employee Handbook and agreeing to submit all employment disputes to arbitration. That form contained the arbitration clause which is the subject of this appeal. The clause states:

> I understand that AMI makes available arbitration for resolution of grievances. I also understand that as a condition of employment and continued employment, I agree to submit any complaints to the published process and agree to abide by and accept the <u>final decision</u> of the arbitration panel as ultimate resolution of my complaints for any and all events that arise out of employment or termination of employment.

2

(emphasis in original).

On October 13, 1994, O'Neil was discharged. O'Neil filed a complaint against the Hospital in state court alleging violations of the FMLA. The Hospital removed the case to the district court and pursuant to section 3 of the FAA, 9 U.S.C. § 3, moved to stay the action pending arbitration. The district court denied this motion from the bench on September 12, 1996. The Hospital appeals.

II.

In the FAA, Congress endorsed arbitration as a less formal and more efficient means than litigation of resolving disputes. In line with this congressional intent, the Supreme Court has repeatedly emphasized that the FAA represents "a liberal federal policy favoring arbitration agreements." Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 24 (1983); accord Mastrobuono v. Shearson Lehman Hutton, Inc., 115 S.Ct. 1212, 1216 (1995); Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26 (1991). Pursuant to that liberal policy, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Moses H. Cone, 460 U.S. at 24-25.

The federal policy favoring the effective and efficient resolution of disputes through arbitration applies with equal strength to claims created by contract or by statute. "By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628 (1985); see also Austin v. Owens-Brockway Glass Container, Inc., 78 F.3d 875, 880-81 (4th Cir. 1996) (statutory claims are subject to arbitration). Nothing in the Family and Medical Leave Act suggests that Congress wished to exempt disputes arising under it from the coverage of the FAA. See Satarino v. A.G. Edwards & Sons, Inc., 941 F.Supp. 609, 613 (N.D. Tex. 1996) (FMLA "contains nothing to suggest that agreements to arbitrate are unenforceable.").

3

It is clear that the provisions of the FAA apply here. The FAA exempts from its coverage "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. The circuit courts have uniformly reasoned that the strong federal policy in favor of arbitration requires a narrow reading of this section 1 exemption. Thus, those courts have limited the section 1 exemption to seamen, railroad workers, and other workers actually involved in the interstate transportation of goods. See Rojas v. TK Communications, Inc., 87 F.3d 745, 748 (5th Cir. 1996); Asplundh Tree Expert Co. v. Bates , 71 F.3d 592, 600-601 (6th Cir. 1995); Miller Brewing Co. v. Brewery Workers Local No. 9, 739 F.2d 1159, 1162 (7th Cir. 1984); Erving v. Virginia Squires Basketball Club, 468 F.2d 1064, 1069 (2d Cir. 1972); Dickstein v. duPont, 443 F.2d 783, 785 (1st Cir. 1971).**1** We agree with this uniform body of precedent. If Congress had wished to exempt all employees from the coverage of the FAA it could have said so. Instead it enumerated an exempt class of employees, which is limited to workers engaged in the shipment and transportation of goods. See Rojas, 87 F.3d at 748. Therefore, since O'Neil was not engaged in the interstate transportation of goods, she does not fall within the section 1 exclusion, and the FAA applies.

III.

The FAA states that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA further provides for stays of proceedings in federal district courts when an issue in the proceeding is referable to arbitration. 9 U.S.C. § 3. O'Neil attempts to avoid these statutory directives by arguing that the arbitration agreement was not supported by consideration and that the agreement was contingent upon the hospital's commitment to pro-

_____

**1 United Electrical, Radial & Machine Workers v. Miller Metal Products, Inc.**, 215 F.2d 221 (4th Cir. 1954), is not to the contrary. To begin with, this case predates the substantial body of Supreme Court precedent supporting utilization of the arbitration process. Even if we were to assume that Miller Metal Products had any remaining vitality, however, it clearly does not apply to individual employment contracts. Id. at 224.

4

vide her "continued employment." We address each of these contentions in turn.

A.

O'Neil first argues the contract to arbitrate was not supported by adequate consideration because the agreement was not binding on the hospital. O'Neil's argument fails because its premise is mistaken.

Here the agreement to be bound by arbitration was a mutual one. The contract to arbitrate was proffered by the employer. Such a proffer clearly implies that both the employer and the employee would be bound by the arbitration process. If an employer asks an employee to submit to binding arbitration, it cannot then turn around and slip out of the arbitration process itself.

It is true that courts have refused to enforce arbitration agreements where the agreement specifically allows the employer to ignore the results of arbitration. See Hull v. Norcom, Inc. , 750 F.2d 1547, 1549 (11th Cir. 1985). That is not the case here, however. There is no such clause in the arbitration agreement signed by O'Neil, and we decline to read such a clause into the contract. A mutual promise to arbitrate constitutes sufficient consideration for this arbitration agreement. Rickborn v. Liberty Life Insurance Co., 468 S.E.2d 292, 300 (S.C. 1996).

O'Neil's argument that AMI has nowhere agreed to be bound by arbitration also ignores the multiple references in the AMI employee handbook, which indicate that AMI agreed that the arbitration process was binding. For, example, the handbook states:"As regards the Fair Treatment Procedure, AMI is committed to accepting the obligation to support and assure access to the binding arbitration procedure for solving disputes if necessary." (emphasis added). Indeed, the arbitration agreement signed by O'Neil clearly states that the decision of the arbitration board is "final." (emphasis in original).

O'Neil's argument is especially misplaced in the circumstances of this case. Not only has the hospital consistently argued that it is bound by the arbitration agreement, it has, by virtue of this suit, shown its

5

commitment to the arbitration process. Indeed, the only party to this case who has shown a desire to avoid binding arbitration is O'Neil herself.[2]

B.

The district court held that O'Neil's "continued employment" was a condition precedent to the arbitration agreement. The court reasoned that since O'Neil had not reported to work and had not been paid a salary since signing the agreement, she had not continued employment with Hilton Head Hospital. The court therefore concluded that the arbitration agreement was not effective. O'Neil argues that we should follow this reasoning on appeal. We decline this invitation.

First, the district court misconstrued the language of the arbitration agreement, reading it to indicate that O'Neil's agreement to arbitrate was conditioned on continued employment with the hospital. This reading reverses the plain meaning of the arbitration clause, which specifically states: "I also understand that as a condition of employment and continued employment, I agree to submit any complaints" to arbitration. This clause placed no employment condition on the hospital, but rather imposed a condition upon O'Neil: if she wished to continue employment, she had to agree to arbitration. If the provision had been intended to create a condition relating to the effectiveness of the arbitration agreement, it would have stated: "I also understand that as a condition of my agreement to arbitrate employment disputes, the Hospital agrees to provide me with continued employment." However, this is simply not what the arbitration clause says.

Second, the district court relied on the provisions of the FMLA, stating that under the FMLA, a person who takes leave must be "restored to the position they had or a similar position." This reliance on the provisions of the FMLA was plainly improper. It is for the arbitrator, not the district court, to determine whether the FMLA is even

_____

[2] Because we find that the contract was supported by a mutual promise to be bound by arbitration, we need not address the hospital's argument that the contract was supported by employment benefits provided to O'Neil after she signed the arbitration agreement.

6

applicable to O'Neil's case. As the Supreme Court stated in <u>Prima Paint Corp. v. Flood & Conklin Manufacturing</u>, 388 U.S. 395, 404 (1967), "in passing upon a § 3 application for a stay while the parties arbitrate, a federal court may consider only issues relating to the making and performance of the agreement to arbitrate." By considering the provisions of the FMLA, the district court put the cart before the horse.

Third, the district court referred to an affidavit by O'Neil, which stated that she had been told by an unnamed supervisor that she would be allowed to return to work if she filled out AMI's employment forms. To the extent the district court relied on this statement, it was in error because this statement had nothing to do with whether the arbitration agreement was binding. Whatever relevance that statement might have is related to O'Neil's underlying claim and thus is for consideration by the arbitrator, not the district court. However, even if the alleged statement had somehow been pertinent to the effectiveness of the arbitration agreement, allegations of a vague promise cannot overcome the binding language of a written arbitration agreement. Waiver and estoppel are disfavored under the FAA. <u>See Moses H. Cone</u>, 460 U.S. at 24-25.

Neither the language of the arbitration agreement nor the other sources relied upon by the district court support the conclusion that continued employment was a condition relevant to the effectiveness of the arbitration agreement. Therefore, the arbitration agreement in this case must be enforced.

IV.

The Supreme Court has repeatedly emphasized that "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." <u>Gilmer</u>, 500 U.S. at 26 (quoting <u>Moses H. Cone</u>, 460 U.S. at 24). The district court's analysis turned this clear injunction on its head, pursuing every possible avenue to avoid the binding arbitration agreement between O'Neil and her employer. We cannot endorse such an approach. Accordingly, we reverse the judgment of the district court and remand with instructions that O'Neil's action be stayed in accordance with section 3 of the FAA.

<u>REVERSED AND REMANDED</u>