Filed: August 24, 1998

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

No. 97-2408
(CA-95-3296-DKC)

Demeka Johnson,

Plaintiff - Appellee,

versus

Circuit City Stores, Inc.,

Defendant - Appelant.

O R D E R

The court amends its opinion filed July 1, 1998, as follows:

On page 9, footnote 1 -- the footnote is amended to read as follows:

> Johnson argues initially that the Federal Arbitration Act (FAA), including its presumption in favor of arbitrability, is not applicable to this case for two reasons: (1) a valid contract did not exist between herself and Circuit City, and (2) even if one did, it did not evidence a transaction involving interstate commerce. See 9 U.S.C. § 2. We address Johnson's first reason in the folloiwng text of our opinion, but we do not address her second reason because Johnson did not raise it below. See Karpel v. Inova Health Sys. Servs., 134F.3d 1222, 1227 (4th Cir. 1998) (issues raised for the first time on appeal generally will not be considered, unless refusal to consider the issue would be plain error or would

result in a fundamental miscarriage of justice); <u>Muth v.</u>
<u>United States</u>, 1 F.3d 246, 250 (4th Cir. 1993) (same).

                              For the Court - By Direction


                         /s/ Patricia S. Connor
                              Clerk

PUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

DEMEKA JOHNSON,
Plaintiff-Appellee,

and

ERIC BROOKS; REGINALD DERRICKSON;
MOHMED IBRAHIM; MAXINE JAMES;
ARTIS KENDALL; BERNARD
LIVINGSTON; HAROLD MOORE;
STANLEY SIMS; STEVEN TAYLOR; H.

No. 97-2408

ALEXANDER RICHARDSON,
Plaintiffs,

v.

CIRCUIT CITY STORES, INCORPORATED,
Defendant-Appellant.

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,
Amicus Curiae.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Deborah K. Chasanow, District Judge.
(CA-95-3296-DKC)

Argued: June 4, 1998

Decided: July 1, 1998

Before WIDENER, HAMILTON, and MICHAEL,
Circuit Judges.

_____

Vacated and remanded by published opinion. Judge Hamilton wrote the opinion, in which Judge Widener and Judge Michael joined.

_____

**COUNSEL**

**ARGUED:** Rex Darrell Berry, DAVIS, GRIMM & PAYNE, Seattle, Washington, for Appellant. Terry Lynn Sullivan, HOWREY & SIMON, Washington, D.C., for Appellee. Jodi Beth Danis, Office of General Counsel, EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Washington, D.C., for Amicus Curiae. **ON BRIEF:** David E. Nagle, LECLAIR RYAN, Richmond, Virginia, for Appellant. William R. O'Brien, Patricia G. Butler, HOWREY & SIMON, Washington, D.C.; Warren Kaplan, THE WASHINGTON LAWYERS' COMMITTEE FOR CIVIL RIGHTS AND URBAN AFFAIRS, Washington, D.C., for Appellee. C. Gregory Stewart, General Counsel, Philip B. Sklover, Associate General Counsel, Vincent J. Blackwood, Assistant General Counsel, EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Washington, D.C., for Amicus Curiae.

_____

**OPINION**

HAMILTON, Circuit Judge:

Acting pursuant to 28 U.S.C. § 1292(b) and upon the petition of Circuit City Stores, Inc. (Circuit City), we agreed to hear this interlocutory appeal of the district court's denial of Circuit City's motion for summary judgment in this race discrimination case, brought pursuant to 42 U.S.C. § 1981. In its order denying Circuit City's motion, the district court held that the arbitration agreement signed by plaintiff Demeka Johnson is unenforceable for lack of consideration. Because we hold that the arbitration agreement is supported by adequate consideration, we vacate the district court's denial of Circuit City's motion for summary judgment and remand for further proceedings consistent with this opinion.

2

I.

Johnson is a black female and a resident of Beltsville, Maryland. In February 1995, Johnson saw an advertisement for a full-time, permanent sales associate position posted on the bulletin board at Circuit City's Beltsville store. At the time Johnson noticed the advertisement, she was employed as the service manager at a local McDonald's restaurant, where she had been employed since 1993. Upon noticing the advertisement for the position at Circuit City, Johnson obtained an application for the position and checked the box for"Full Time" employment indicating the specific position for which she was applying. (J.A. 109).

After submitting her application, Johnson received no response from Circuit City for several months. During that time, she stopped by and telephoned the store on a number of occasions to inquire about her application, and on one such occasion she was told that her application had been lost. According to Johnson, she ultimately submitted four or five applications for the full-time sales associate position during the period from February to September 1995. The final application, one completed by Johnson on September 6, 1995, is the application at issue in this case.

Contained in the employment application Johnson completed on September 6, 1995 was a Dispute Resolution Agreement. In the preliminary section of the employment application, the application warned with respect to the Dispute Resolution Agreement: "This agreement requires you to arbitrate any legal dispute related to your application for employment or employment with Circuit City. Circuit City will not consider your application unless this agreement is signed." (J.A. 105). At the beginning of the section describing the Dispute Resolution Agreement, the application warned further: "The Dispute Resolution Agreement and the Dispute Resolution Rules and Procedures affect your legal rights. You may wish to seek legal advice before signing this Dispute Resolution Agreement." (J.A. 106). The agreement continued:

> I have read this Agreement and understand that I should read the Dispute Resolution Rules and Procedures over the next few days.

3

I understand that I may withdraw my consent to this Agreement within three (3) days from the date on which I sign below by notifying the Applicant Screening Department in writing . . . that <u>I am withdrawing my application for employment at Circuit City</u>. . . . I understand that by so notifying the Applicant Screening Department, I will not be bound to this Agreement and that I no longer will be eligible for employment at Circuit City. I recognize that if I sign the Agreement and do not withdraw within three days of signing I will be required to arbitrate any and all employment-related claims I may have against Circuit City, whether or not I become employed by Circuit City.

This Agreement will be enforceable throughout the application process, my employment, and thereafter with respect to any claims arising from or relating to my application or candidacy for employment, employment or cessation of employment with Circuit City. I then must arbitrate all my employment-related claims, and I may not file a lawsuit in court.

(J.A. 106) (emphasis in original). Johnson signed the Dispute Resolution Agreement and provided her social security number. Immediately below her signature, the agreement contained an additional provision, which stated: "Circuit City agrees to follow this Dispute Resolution Agreement and the Dispute Resolution Rules and Procedures in connection with the Associate whose signature appears above." <u>Id.</u> Underneath this provision was the signature of a Circuit City representative. Immediately following the Dispute Resolution Agreement in the application was the following advisory:

**STOP!**

<u>IF YOU HAVE **NOT** SIGNED THE AGREEMENT . ..</u>

If you have decided **not** to agree to the terms of the preceding DISPUTE RESOLUTION AGREEMENT then you do not need to complete the balance of this application. We appreciate your interest in the company.

4

IF YOU HAVE SIGNED THE AGREEMENT . . .

> If you have decided at this time to **agree** to the terms of the preceding DISPUTE RESOLUTION AGREEMENT then you will need to complete the balance of this application so that we can continue with your application process.

(J.A. 107) (emphasis in original).

As set forth above, the Dispute Resolution Agreement incorporates the terms of the Dispute Resolution Rules and Procedures (Rules and Procedures). With respect to what claims are subject to arbitration, Rule 2 of the Rules and Procedures provides that "any and all employment-related legal disputes, controversies or claims of an Associate arising out of, or relating to, an Associate's application or candidacy for employment, employment or cessation of employment with Circuit City or one of its affiliates shall be settled exclusively by final and binding arbitration . . . ." (J.A. 112). This rule provides further that all previously unasserted claims arising under federal, state, or local statutory or common law shall be subject to arbitration, including claims arising under the Age Discrimination in Employment Act, Title VII, the Americans With Disabilities Act, the Fair Labor Standards Act, and 42 U.S.C. § 1981. Rule 4 provides for the means by which "[an] Associate shall commence an arbitration." (J.A. 113). Under Rule 11, the Rules and Procedures provide that the arbitrator's authority is "limited to deciding the case submitted by the Associate." (J.A. 117).

According to Johnson, when she submitted her application form, no Circuit City employee discussed with her the application, the Dispute Resolution Agreement, or the Rules and Procedures. In addition, after submitting the application, she was given three books to review, none of which contained the Rules and Procedures the application had advised she read.

Following her submission of the application on September 6, 1995, Johnson was called for an interview at the Beltsville store. Johnson was interviewed by three persons, including the store manager, all of whom indicated to Johnson that they thought she was well qualified and would receive an offer of employment. According to Johnson,

5

during the course of these interviews, she spoke to a Caucasian woman who had applied for a position just one week earlier and was already working. In addition to undergoing interviews, Johnson provided a urine sample and took a written examination. Johnson was subsequently told by a store employee that her application was complete and the results of her tests were "fully successful." (J.A. 60).

Shortly thereafter, the store manager summoned Johnson for a second interview. According to Johnson, the store manager, whose attitude had changed from the previous interview, stated that the purpose of the interview was to make certain that Johnson really wanted the job. The store manager then told Johnson that there were no positions available at the Beltsville store, but that she would forward Johnson's application to two other Circuit City stores. Because Johnson did not have access to transportation to the other stores, Johnson declined the offer to have the store manager forward her application.

During the next several weeks after her second interview, Johnson stopped by the Beltsville store on a number of occasions to see whether the position for which she had applied had been filled. According to Johnson, the store continued to advertise the full time, permanent position as vacant until after this action was filed on October 31, 1995.

Also some time after Johnson's second interview with the store manager, Johnson's mother called Circuit City to complain about her daughter's experience. As a result of these calls, Johnson was put in touch with Cheryl Holland, a district manager for Circuit City, who told her the store manager would now "love" to have Johnson work at the Beltsville store and Johnson should call there again. (J.A. 61). As directed, Johnson called the store manager at Beltsville but was referred to the scheduling manager. The scheduling manager then advised Johnson that she would only be considered for a temporary sales position for the holiday season. Johnson declined the offer of temporary employment because she had only applied for, and was only interested in, a full-time, permanent position. Johnson asserts that she has not heard from Circuit City since that time.

On October 31, 1995, a group of current and former employees of Circuit City filed this action in the United States District Court for the

6

District of Maryland, alleging that Circuit City engaged in racially discriminatory promotion practices in violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq. Johnson joined this suit prior to the plaintiffs' filing of their second amended complaint, and in the second amended complaint, Johnson alleged that Circuit City engaged in discriminatory employment practices affecting her in violation of 42 U.S.C. § 1981. Johnson's position in the lawsuit is unique and different from that of other plaintiffs in that she is the only plaintiff who was never employed by Circuit City, but rather, was merely an applicant for employment.

On November 20, 1996, prior to any discovery on Johnson's claim, Circuit City filed a motion for summary judgment seeking the dismissal of Johnson's claim on the basis that she was bound by an agreement to arbitrate any claims arising out of her application for employment. On May 30, 1997, the district court entered an order and memorandum opinion denying Circuit City's motion for summary judgment, holding that under Maryland contract law, the alleged arbitration agreement was void for lack of consideration.

On June 13, 1997, Circuit City filed a motion for certification for appellate review pursuant to 28 U.S.C. § 1292(b). On that same date, this court issued our opinion in O'Neil v. Hilton Head Hospital, 115 F.3d 272 (4th Cir. 1997), upholding the validity of an arbitration agreement, at least arguably similar to the Dispute Resolution Agreement at the center of this dispute. On September 16, 1997, the district court entered a memorandum opinion and order granting Circuit City's motion for certification to appeal, stating that an immediate appeal may materially advance the determination of the litigation between Johnson and Circuit City, regardless of which way this court rules. The district court declined, however, to stay proceedings in the district court pending the interlocutory appeal. On October 16, 1997, we granted Circuit City's petition for permission to appeal, and Circuit City now seeks reversal of the district court's denial of its motion for summary judgment as to Johnson's claims of unlawful race discrimination in violation of § 1981.

On November 25, 1997, Circuit City filed a motion to correct the record on appeal, apparently because counsel had discovered that one printed page of the standard employment application form completed

7

by applicants for employment with Circuit City did not appear in the copy of Johnson's application which had been attached to Circuit City's motion for summary judgment in the district court. Johnson opposed the motion, arguing that there was no evidence that Johnson had been provided with a complete copy of the application and that the page was not included in the record before the district court. In response to Circuit City's motion, we deferred action on the motion to permit the parties to file a similar motion in the district court so that the district court could rule on the motion in the first instance. The district court denied Circuit City's motion to correct the record on February 17, 1998, and we subsequently deferred action on Circuit City's motion to correct the record pending oral argument.

## II.

The district court held as a matter of law that the arbitration agreement signed by Johnson in this case was not supported by adequate consideration and was, therefore, unenforceable. Because its decision was a legal one, our review is de novo. See Higgins v. E.I. DuPont de Nemours & Co., 863 F.2d 1162, 1167 (4th Cir. 1988) (whether a party was entitled to summary judgment is a matter of law which we review de novo).

Whether a party agreed to arbitrate a particular dispute is an issue for judicial determination to be decided as a matter of contract. See AT&T Technologies, Inc. v. Communications Workers of Am., 475 U.S. 643, 648-49 (1986); Arrants v. Buck, 130 F.3d 636, 640 (4th Cir. 1997). In so deciding, the court should apply "ordinary state-law principles that govern the formation of contracts." First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995); see also Arrants, 130 F.3d at 640 ("Courts decide whether there is an agreement to arbitrate according to common law principles of contract law."). However, the Supreme Court has emphasized that "it should be kept in mind that `questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration.'" Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26 (1991) (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983)). "Pursuant to that liberal policy, `any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allega-

8

tion of waiver, delay, or a like defense to arbitrability.'" O'Neil, 115 F.3d at 273-74 (quoting Moses H. Cone, 460 U.S. at 24-25).**1**

In this case, the district court applied basic principles of contract law and concluded that the arbitration agreement on which Circuit City relied to compel Johnson to arbitrate her § 1981 claim against Circuit City lacked sufficient consideration to constitute an enforceable agreement. Specifically, the district court held that the failure of Circuit City to affirmatively promise to incur any detriment in exchange for Johnson's agreement to arbitrate any claims she might have against Circuit City meant that Johnson's agreement to arbitrate was not supported by any consideration on Circuit City's part and, thus, lacked mutuality. The district court, in particular, noted that while the Dispute Resolution Agreement stated that Johnson's application would not be considered in the absence of her agreement to arbitrate her claims, Circuit City never actually agreed to consider Johnson's application even if she did agree to arbitrate her claims. The district court also held that because Circuit City did not agree to arbitrate any claims it had against Johnson and because the arbitrator's authority was specifically limited to deciding "the case submitted by the Associate," (J.A. 117), consideration for the agreement could not be found in a "`mutual promise[ ] to arbitrate disputes under the contract,'" (J.A. 170) (quoting Holmes v. Coverall North Am., Inc., 649 A.2d 365, 370 (Md. 1994)).

Following the district court's denial of Circuit City's motion for summary judgment, however, we decided O'Neil, in which we held

_____

**1** Johnson argues initially that the Federal Arbitration Act (FAA), including its presumption in favor of arbitrability, is not applicable to this case for two reasons: (1) a valid contract did not exist between herself and Circuit City, and (2) even if one did, it did not evidence a transaction involving interstate commerce. See 9 U.S.C. § 2. We address Johnson's first reason in the folloiwng text of our opinion, but we do not address her second reason because Johnson did not raise it below. See Karpel v. Inova Health Sys. Servs., 134 F.3d 1222, 1227 (4th Cir. 1998) (issues raised for the first time on appeal generally will not be considered, unless refusal to consider the issue would be plain error or would result in a fundamental miscarriage of justice); Muth v. United States, 1 F.3d 246, 250 (4th Cir. 1993) (same).

9

that an arbitration agreement was supported by adequate consideration where both parties agreed to be bound by the arbitration process. See O'Neil, 115 F.3d at 274. In O'Neil, the plaintiff signed an acknowledgment form recognizing receipt of an employee handbook and agreeing to submit all employment disputes to arbitration. See id. at 273. Specifically with respect to arbitration, the plaintiff agreed:

> "I understand that [the employer] makes available arbitration for resolution of grievances. I also understand that as a condition of employment and continued employment, I agree to submit any complaints to the published process and agree to abide by and accept the final decision of the arbitration panel as ultimate resolution of my complaints for any and all events that arise out of employment or termination of employment."

See id. (quoting agreement) (emphasis in original). In holding that the plaintiff's agreement to arbitrate employment disputes was supported by adequate consideration, we rejected her argument that the absence of any affirmative obligation on the part of the employer to adhere to the arbitration process was fatal to its enforcement, stating:

> [Plaintiff] first argues the contract to arbitrate was not supported by adequate consideration because the agreement was not binding on the hospital. [Plaintiff's] argument fails because its premise is mistaken.

> Here the agreement to be bound by arbitration was a mutual one. The contract to arbitrate was proffered by the employer. Such a proffer clearly implies that both the employer and the employee would be bound by the arbitration process. If an employer asks an employee to submit to binding arbitration, it cannot then turn around and slip out of the arbitration process itself.

Id. Although we recognized in O'Neil that an agreement may be unenforceable where the agreement permits the employer to ignore the results of arbitration, we noted that the arbitration agreement in O'Neil did not contain such a clause and we "decline[d] to read such a clause into the contract." Id. at 275. Instead, we held that "[a]

10

mutual promise to arbitrate constitutes sufficient consideration for [the] arbitration agreement." Id.

As in O'Neil, both parties in this case agreed to be bound by the arbitration process for the resolution of any claim required to be submitted to arbitration under the Dispute Resolution Agreement. Therefore, we hold that the Dispute Resolution Agreement was supported by adequate consideration. Although, as the district court noted, Circuit City did not affirmatively agree to consider Johnson's application even if she signed the agreement, but rather, stated merely that her application would not be considered in the absence of her signature, no consideration above and beyond the agreement to be bound by the arbitration process was required. Here, the Dispute Resolution Agreement contained a provision stating, "Circuit City agrees to follow this Dispute Resolution Agreement and the Dispute Resolution Rules and Procedures in connection with the Associate whose signature appears above." (J.A. 106). Because Circuit City agreed to be mutually bound by the terms of the Dispute Resolution Agreement, it was not necessary that it agree to incur any additional detriment in exchange for Johnson's agreement to arbitrate her employment-related claims, regardless of whether that consideration was an agreement to actually consider her application or some other additional consideration. Rather, the agreement to be bound by the same rules was sufficient.

We recognize, as noted by Johnson, that the Dispute Resolution Agreement apparently requires the arbitration only of Johnson's claims against Circuit City and does not appear to require the arbitration of any claims Circuit City might have against Johnson, as evidenced by the limitation of the arbitrator's authority to claims "submitted by the Associate." (J.A. 117). However, the agreement in O'Neil similarly appeared to require only the arbitration of the employee's complaints, providing that the employee, specifically, agreed "to submit any complaints" to arbitration and to accept the final decision as ultimate resolution of "[the employee's] complaints." O'Neil, 115 F.3d at 273. Although the district court opined in its order granting Circuit City's motion for certification of appeal that we recognized in O'Neil an implied agreement on the part of the employer to arbitrate its claims, we do not read O'Neil as implying such an agreement. Instead, O'Neil implied merely an agreement on the part of the employer to "be bound by the arbitration process." Id. at 274.

11

An agreement to "be bound by the arbitration process" does not necessarily mean an agreement to submit the employer's claims to arbitration; rather, it more likely means that the employer agreed, <u>with respect to any claims the employer has agreed should be submitted to arbitration</u>, to be bound by the rules of the arbitration procedure and to be bound by its results. Therefore, <u>O'Neil</u> is not distinguishable on the basis that, in <u>O'Neil</u>, we interpreted the agreement as requiring not only that the employer be bound by the arbitration process, but also that the employer agree to submit any claims it might have against the employee to arbitration.

III.

Because we held in <u>O'Neil</u>, under materially similar circumstances, that the arbitration agreement in that case was supported by sufficient consideration to uphold its enforceability, the district court erred in holding the Dispute Resolution Agreement in this case to be unenforceable because it lacked adequate consideration and in denying Circuit City's motion for summary judgment on that basis.**2** We, therefore, vacate the district court's order denying Circuit City's motion for summary judgment as to Johnson's claims and remand to the district court for further consideration of Circuit City's motion.**3**

<u>VACATED AND REMANDED</u>

_____

**2** In rendering our decision, we have not relied on the page of the standard employment application (Page 2) that Circuit City asserts was part of the application signed by Johnson and has submitted in support of its motion to correct the record on appeal. We therefore deny Circuit City's motion to correct the record for purposes of this appeal. However, on remand, Circuit City will have the opportunity to seek leave of the district court to supplement the record to include the missing page.

**3** Because the district court held the Dispute Resolution Agreement invalid solely on the basis of inadequate consideration, we express no opinion as to the merits of Johnson's alternative arguments relating to the enforceability of the Dispute Resolution Agreement.

12