PHOENIX RENOVATION CORP.,
t/a Phoenix Construction,
Inc., Plaintiff,

v.

GULF COAST SOFTWARE, INC.,
t/a Vertical Market Software

and

Computer Dimensions Associates,
Defendants.

No. Civ.A. 00–121–A.

United States District Court,
E.D. Virginia.

Nov. 22, 2000.

David G. Barger, Kilpatrick Stockton LLP, Washington, DC, for plaintiff.

Leslie P. Arrington, Nixon Peabody LLP, Washington, DC, for defendant.

## MEMORANDUM OPINION

BRINKEMA, District Judge.

On September 15, 2000, a magistrate judge issued a Report and Recommendation ("Report"), in which he recommended that a default judgment in the total amount of $158,218.00 plus costs be entered in favor of plaintiff, Phoenix Renovation Corp., t/a Phoenix Construction, Inc. against the defaulting defendant, Computer Dimensions Associates ("CDA"). The parties were advised that failure to object timely to the Report waived appellate review of any judgment entered on the basis of the Report. On September 28, 2000, the non-defaulting defendant, Gulf Coast Software, Inc., t/a Vertical Market Software ("VMS") filed an objection to many of the Report's factual findings about its software products. VMS also complained that plaintiff is trying to circumvent its obligation to arbitrate disputes over VMS' software by "proving its case" in these default proceedings. The defaulting defendant,

CDA, filed no objections and therefore has waived appellate review of any judgment based on the Report.

Having fully reviewed the case file, the Report and VMS' objections, we accept the Report and the magistrate's recommendations with the limitations and restrictions set forth herein.

## I. Procedural Background

On January 24, 2000, plaintiff, a Virginia corporation with its principal place of business in Virginia, filed this three count diversity action against VMS, a Florida corporation with its principal place of business in Florida, and CDA, a Delaware corporation with its principal place of business in Pennsylvania. The gravamen of Phoenix's complaint is that software manufacturer VMS and software distributor CDA together convinced Phoenix to purchase VMS-manufactured accounting software products from CDA through deliberate misrepresentations of the software's capabilities and that these products failed to satisfy either Phoenix's specifications or the defendants' representations. The complaint charges both defendants with Breach of Contract–Gross Negligence–Willful Misconduct (Count 1), Breach of Express and Implied Warranties (Count 2), and Fraud in the Inducement (Count 3).

On February 16, 2000, a process server attempted to serve CDA. When he arrived at defendant's address, the woman who answered the door and acknowledged the address was for CDA, refused to accept process. *See* Process Return, file entry 2. Service was again attempted on July 30, 2000. This time a copy of the complaint and summons were served on Vance Anderberry, the defendant's CEO. Since that time, CDA has not filed an answer or made any appearance in this case.

Before the plaintiff's second effort to serve CDA, VMS moved for a stay of litigation pending the conclusion of arbitration proceedings prescribed by VMS's contract with Phoenix.[1] On April 7, 2000, VMS's motion was granted, this litigation was stayed with respect to both defendants, and plaintiff and VMS were "directed to proceed to arbitration." *See Phoenix Renovation Corp. v. Gulf Coast Software et al.,* No. 00–121–A (E.D.Va. April 7, 2000).

Phoenix subsequently successfully moved for leave to pursue a default judgment against CDA which, unlike VMS, had never appeared in any capacity or responded to the complaint at all. Plaintiff pointed to the admonition in Fed.R.Civ.P. 55(a) that default judgment "shall" be entered against defendants failing to "plead or otherwise defend" against claims for affirmative relief. Plaintiff's Motion for Leave to File Motion for Entry of Default Judgment and Motion to Show Cause Why Default Judgment Should Not Be Entered at 2. On May 5, 2000, a magistrate judge lifted the stay of litigation "to the extent that default judgment may be sought against [CDA]." *Phoenix Renovation Corp. v. Gulf Coast Software et al.,* CA–00–121–A (E.D.V.A. May 5, 2000) On August 9, 2000, Phoenix moved for the entry of default against CDA and for the subsequent entry of a default judgment in the amount of $158,218.[2]

## II. The Magistrate's Report and Recommendation

Based solely on the uncontested facts alleged in the complaint, the Report concludes that CDA breached its contract with Phoenix, breached several implied and express warranties made to Phoenix, and fraudulently misrepresented and failed to disclose VMS's alleged misrepresentations of the software's capabilities. Report at 2–4. Because

---

**1.** The software packaging included an End–User License Agreement purporting to establish an agreement between the software purchaser and VMS. Paragraph 6, headed "Miscellaneous," provides in part that: "The form (sic) selected by the parties for any proceeding or suit in law or equity arising from or incident to this Agreement as among the parties hereto shall be located in Pensacola, Escambia County, Florida and shall be submitted to binding arbitration pursuant to the then current rules of the American Arbitration Association, with the parties to bear their own costs." Packaging VMS End–User Licensing Agreement, Snyder Aff., Exhibit A. The same agreement appeared in the prompt screens of the software, with the additional provision for application of the Florida evidence rules in arbitration. Software VMS End–User Licensing Agreement, Snyder Aff., Exhibit A.

**2.** Earlier efforts to secure default judgment were frustrated by insufficient service of process upon CDA.

CDA has not contested any of these facts, they are deemed admitted as against CDA only. The magistrate judge found Phoenix's claims for reimbursement of the $42,400.00 purchase price plus $115, 818 in incidental damages to be appropriately supported by declarations. Report at 4.

Although CDA did not object to the Report, CDA's non-defaulting co-defendant, VMS, opposes entry of a default judgment against CDS until the resolution of its dispute with Phoenix. VMS contends that the April 7, 2000 order instructing VMS to arbitrate its dispute with Phoenix restrained VMS from challenging the evidence on which Phoenix's default judgment relies. VMS argues that entry of default judgment against CDS would "penalize" VMS for awaiting arbitration, contravening federal policy favoring arbitration proceedings. *See O'Neil v. Hilton Head Hospital*, 115 F.3d 272, 273 (4th Cir.1997).

VMS implies that it would be "penalized" through the preclusive effects of a default judgment in subsequent arbitration or litigation. Although the contours of collateral estoppel vary between jurisdictions, it is highly unlikely that VMS would be charged with the preclusive effects of a default judgment against CDA in the absence of privity between them. *See Horton v. Morrison*, 248 Va. 304, 448 S.E.2d 629, (1994) (default judgment in action by third party lacks preclusive effect in action by different plaintiff). In any event, we need not resolve the preclusion issue because considerations of judicial economy and consistency independently compel us to postpone entry of default judgment against CDA until the conclusion of Phoenix's action against VMS.

### III. Discussion

■ Fed.R.Civ.P. 54(b)[3] authorizes entry of a final judgment as to one of multiple

defendants in a civil action following an express finding that "there is no just reason for delay." The avoidance of logically inconsistent judgments in the same action and factually meritless default judgments provide "just reason."

The United States Supreme Court first confronted this issue in *Frow v. De La Vega*, 15 Wall. 552, 82 U.S. 552, 21 L.Ed. 60 (1872). *Frow* arose from allegations that fourteen defendants had conspired to defraud the plaintiff. After initial entry of default judgment in the plaintiff's favor against non-appearing defendants, the trial court subsequently found in favor of the remaining defendants that no fraud had occurred. The Court condemned this "incongruity" as "unseemly and absurd." *Id.* at 554.

> The true mode of proceeding where a bill makes a joint charge against several defendants, and one of them makes default, is simply to enter a default and a formal decree *pro confesso* against him, and proceed with the cause upon the answers of the other defendants. The defaulting defendant has merely lost his standing in court. He will not be entitled to service of notices in the cause, nor to appear in it in any way. He can adduce no evidence, he cannot be heard at the final hearing. But if the suit should be decided against the complainant on the merits, the bill will be dismissed as to all the defendants alike— the defaulter as well as the others. If it be decided in the complainant's favor, he will then be entitled to a final decree against all. But a final decree on the merits against the defaulting defendant alone, pending the continuance of the cause, would be incongruous and illegal.

*Frow*, 82 U.S. at 554.

*Frow's* vitality has been questioned since the adoption of Fed.R.Civ.P. 54. Most juris-

---

**3.** Fed.R.Civ.P. 54(b) Judgment Upon Multiple Claims or Involving Multiple Parties:

When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties *only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.* In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties. (Emphasis added).

dictions have narrowly construed *Frow* to bar entry of default judgment against one of several defendants only if "the theory of recovery is one of true joint liability, such that, as a matter of law, no one defendant may be liable unless all defendants are liable, or the nature of the relief demanded is such that, in order to be effective, it must be granted against each and every defendant." 10 J. Moore, et al., Moore's Federal Practice ¶ 55.25 (3d ed.1999). *See In re Uranium Antitrust Litig.*, 617 F.2d 1248, 1256–58 (7th Cir.1980) ("The result in Frow was clearly mandated by the Court's desire to avoid logically inconsistent adjudications as to liability. However, when different results as to different parties are not logically inconsistent or contradictory, the rationale for the *Frow* rule is lacking."); *International Controls Corp. v. Vesco*, 535 F.2d 742, 746–47 n. 4 (2d Cir. 1976), *cert. denied*, 434 U.S. 1014, 98 S.Ct. 730, 54 L.Ed.2d 758 (1978) ("[A]t most, *Frow* controls in situations where the liability of one defendant necessarily depends upon the liability of the others."); *Whelan v. Abell*, 953 F.2d 663, 674 (D.C.Cir.1992), *citing Carter v. District of Columbia*, 795 F.2d 116, 137 (D.C.Cir.1986) ("[D]efault order that is inconsistent with a judgment on the merits must be set aside only when liability is truly joint—that is, when the theory of recovery requires that all defendants be found liable if any one of them is liable—and when the relief sought can only be effective if judgment is granted against all.")

Other authorities suggest that when defendants are similarly situated though not jointly liable, final judgment should not be entered against a defaulting defendant until after a determination on the merits with respect to other defendants. *See Gulf Coast Fans v. Midwest Electronics Importers*, 740 F.2d 1499, 1512 (11th Cir.1984); 10A Charles Alan Wright, Arthur R. Miller and Mary Kay Kane, Fed.Prac. & Proc.Civ.3d § 2690 (1998) (*Frow* rule "probably can be extended to situations in which several defendants have closely related defenses").

The Fourth Circuit last considered *Frow* in a 1967 action against a contractor and the contractor's surety. *See U.S. for Use of Hudson v. Peerless Insurance Co.*, 374 F.2d 942 (4th Cir.1967). After the surety failed to appear, but while the claims against the contractor were still pending, the district court entered a default judgment against the surety. The Fourth Circuit held that "[a]lthough *Frow* was a case of joint liability, we think the procedure established for multiple defendants by Rule 54(b) is strikingly similar and applicable not only to situations of joint liability but also to those where liability is joint and/or several." [4] *Id.* at 944. Although one district court has relied on contemporary authority from other circuits to limit *Frow* to instances of formal joint liability, *see Weft Inc. v. G.C. Inv. Associates*, 630 F.Supp. 1138, 1143 (E.D.N.C.1986), the Fourth Circuit has yet to revisit the matter.

In the case at hand, the plaintiff's theory of recovery against CDA is largely subsumed by its theory of recovery against defendant VMS. Plaintiff pleaded its three causes of action almost entirely in terms of misconduct by "VMS and Computer Dimensions." Compl. at ¶¶ 26–28, 30–34, 36, 38. The sole operative pleading distinguishing the defendants' roles asserts that "despite its knowledge that [representations by VMS to Phoenix] were false, Computer Dimensions did not disclose their falsity to Phoenix." Compl. at ¶ 37. Similarly, plaintiff's theories of recovery against both defendants are primarily premised on common facts concerning the limitations of VMS products and the defendants' awareness of these limitations. Although the complaint is not pleaded in terms of the formal joint liability of both defendants for all causes of action, the defendants are "similarly situated" with respect to the facts which, if established, would foreclose liability under the causes of action pleaded. This is clearly a case in which premature entry of default judgment against one defendant risks unavoidable inconsistency with a later judgment concerning the other defendant in the same action. If, for example, later litigation were to yield a finding of fact that VMS products met Phoenix's stated specifications and satisfied the defendants' warranties, then there might remain no basis for recovery from CDS consistent with the later ruling.

**4.** Rule 54(b) was last amended in 1966, prior to this Fourth Circuit ruling.

**584**

*IV. Conclusion*

In light of the strong federal policy favoring arbitration, the extreme risk of inconsistent outcomes, and the absence of express Fourth Circuit instructions limiting *Peerless Insurance*, we decline to enter a final default judgment against defendant CDA at this juncture. Instead, we find that CDA may not contest any of the findings of fact or conclusions of law set forth in the magistrate's Report. These findings and conclusions fully support entry of the recommended default judgment of $158,218.00 plus costs against CDA. However, we will hold in abeyance the actual entry of a final default judgment against CDA pending conclusion of this action with respect to defendant VMS. Accordingly, the Court adopts the magistrate's Report to the extent consistent with the analysis above. An appropriate order will issue.

The Clerk is directed to forward copies of this Memorandum Opinion to counsel of record and defaulting defendant Computer Dimensions Associates c/o Mr. Vance Anderberry at Computer Dimensions Associates, Inc., P.O. Box 6328, 1621 Berkshire Lane, Harrisburg, PA 17112.