Richard M. SHAFFER, Plaintiff,

v.

ACS GOVERNMENT SERVICES, INC., Defendant.

No. Civ.A.AW–03–2138.

United States District Court, D. Maryland, Southern Division.

June 15, 2004.

Robert Scott Oswald, Employment Law Group PLLC, Washington, DC, for Plaintiff.

Nikki Michelle Tinker, James Mason Loots, Ford and Harrison LLP, Washington, DC, for Defendant.

### MEMORANDUM OPINION

WILLIAMS, District Judge.

Plaintiff Richard M. Shaffer has filed suit against Defendant ACS Government Services, Inc. ("ACS") alleging violations of 28 U.S.C. § 1875(a), also known as the Jury System Improvement Act and Md. Code Ann., *Cts. & Jud. Proc.* § 8–105 (2003) ("Jury System Improvement Act").

Pending before this Court is Defendant's Motion to Dismiss, Or, Alternatively, To Stay Action And Compel Arbitration [8]. The Motion has been fully briefed and is ripe for review. No hearing is necessary. *See* D. Md. R. 105.6. Upon consideration of the arguments made in support of, and in opposition to, the motion, the Court makes the following determinations.

### I. Background

For the purposes of this motion, the relevant background facts are minimal. Plaintiff began working at ACS on September 10, 2001. On or about March 7, 2002, Plaintiff received a summons to report to the United States District Court for the District of Columbia for potential service on a grand jury. In or about April 2002, Plaintiff appeared for grand jury selection proceedings, and was subsequently called to active grand jury service starting on November 20, 2002. Plaintiff alerted his supervisors to this fact, and advised them that his service would be continuing in nature through at least October 23, 2003. On or about November 20, 2002, Plaintiff began his term on the grand jury. On or about January 30, 2003, Plaintiff's employment with ACS was terminated.

Plaintiff filed suit in this Court alleging that Defendant violated the Jury System Improvement Act by unlawfully terminating his employment as a result of Plaintiff's participation in a grand jury.

Defendant has moved this Court to dismiss the Complaint, or, in the alternative, to stay the action and compel arbitration.

### II. Standard of Review

#### A. Motion To Compel Arbitration

The Court recognizes that motions to compel arbitration exist in the netherworld between a motion to dismiss and a motion for summary judgment. In order to effec-

tively assess the merits of this motion, however, the court must consider documents outside the pleadings. As such, the Court will treat Defendant's motion as a motion for summary judgment. *See* Fed. R.Civ.P. 12(c); [1] *see, e.g., Mastercraft Interiors, Ltd. v. ABF Freight Systems, Inc.,* 284 F.Supp.2d 284, 288–89 (D.Md.2003).

### B. Rule 56

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment will be granted when no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Haavistola v. Comty. Fire Co. of Rising Sun, Inc.,* 6 F.3d 211, 214 (4th Cir.1993); *Etefia v. East Baltimore Comm. Corp.,* 2 F.Supp.2d 751, 756 (D.Md.1998). "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 477 U.S. 317, 91 L.Ed.2d 265 (1986) (quoting Fed. R.Civ.P. 1). The court must "draw all justifiable inferences in favor of the non-moving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine,* 501 U.S. 496, 520, 111 S.Ct. 2419, 115 L.Ed.2d 447 (1991) (citations omitted). While the evidence of the non-movant is to be believed and all justifiable inferences drawn in his or her favor, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *See Deans v.*

*CSX Transp., Inc.,* 152 F.3d 326, 330–31 (4th Cir.1998); *Beale v. Hardy,* 769 F.2d 213, 214 (4th Cir.1985).

In responding to a proper motion for summary judgment, the party opposing summary judgment must present evidence of specific facts from which the finder of fact could reasonably find for him or her. *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505; *Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548; 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2729.1 (3d. ed.1998). The non-movant must show that he has access to admissible evidence for presentation at trial. *Celotex,* 477 U.S. at 327, 106 S.Ct. 2548. In the absence of contradictory evidence showing a genuine dispute as to a material fact, the moving party is entitled to judgment as a matter of law. *See id.* at 317, 106 S.Ct. 2548. For the purposes of summary judgment, a genuine dispute exists if a reasonable jury could return a verdict for the non-moving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. While the non-moving party must do more than merely raise some doubt as to the existence of a fact, the moving party ultimately bears the burden of demonstrating the absence of all genuine issues of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

### III. Analysis

Defendant contends that Plaintiff's claim is covered by a mandatory ACS Arbitration Policy instituted by Defendant in April of 2002. According to Defendant, after Plaintiff commenced his employment, ACS circulated via email and written memorandum an announcement that ACS was instituting a mandatory dispute resolution

---

1. Courts have also recognized that when the formation of an arbitration agreement is at issue, a motion to compel arbitration is viewed as a motion for summary judgment. *See Par–Knit Mills, Inc. v. Stockbridge Fabrics Co.,* 636 F.2d 51, 54 (3d Cir.1980).

program ("DRP"). Defendant contends that it alerted employees that their continued employment past April 12, 2002 would constitute acceptance of the DRP, and forfeiture of their rights to pursue relief in the courts for any employment disputes. Defendant also argues that, on or about June 4, 2002, Plaintiff signed a document acknowledging receipt of an employee manual which included a short section on the DRP. Finally, Defendant contends that Plaintiff was aware of the DRP and the agreement to submit employment disputes to arbitration because Plaintiff participated in an ethics training program, a component of which covered the DRP. In response, Plaintiff maintains that he has no recollection of receiving the emails and memoranda on these issues. In addition, he argues that he at no time forfeited his right to a trial by his peers. Plaintiff further contends that continued employment cannot constitute acceptance of, or consideration for, an arbitration agreement.

## A. Federal Arbitration Act

The Federal Arbitration Act ("FAA") applies to contracts "evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract." 9 U.S.C. § 2, Federal policy strongly favors arbitration. *See O'Neil v. Hilton Head Hospital,* 115 F.3d 272, 273 (4th Cir.1997) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)). In accordance with that policy, "any doubts concerning the scope of the arbitrable issues should be resolved in favor of arbitration...." *Moses H. Cone,* 460 U.S. at 24–25, 103 S.Ct. 927. As a result, in a "close-call" on arbitrability, the Court must decide in favor of sending the parties to arbitration. *See Long v. Silver,* 248 F.3d 309, 316 (4th Cir.2001) (citing *Peoples Sec. Life Ins. Co.*

*v. Monumental Life Ins. Co.,* 867 F.2d 809, 812 (4th Cir.1989)).

While federal policy favors arbitration, a court must first determine whether the parties actually agreed to arbitrate. This determination is a matter of contract law and " 'a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.' " *AT & T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) (quoting *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582–83, 80 S.Ct. 1347, 4 L.Ed. 1409 (1960)). Whether parties have contracted to arbitrate is a matter of state contract law, and the court must apply " 'ordinary state-law principles that govern the formation of contracts....' " *Johnson v. Circuit City Stores, Inc.,* 148 F.3d 373, 377 (4th Cir. 1998) (quoting *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995)). Accordingly, the Court must apply state-law principles governing contracts when analyzing formation and federal substantive law in analyzing arbitrability. *See Int'l Paper Co. v. Schwabedissen Maschinen Anlagen GMBH,* 206 F.3d 411, 417 n. 4 (4th Cir.2000).

As a preliminary matter, this Court agrees with the Eastern District of New York's determination that claims under the Jury System Improvement Act are subject to arbitration under the FAA. *See McNulty v. Prudential–Bache Securities,* 871 F.Supp. 567 (E.D.N.Y.1994). As that Court concluded, "[t]here is no evidence in the statute's text or legislative history that Congress intended to remove claims under the Jurors' Act from arbitration; nor is there an inherent conflict between arbitration and the purposes of the Act." *Id.* at 569.

### A. Contract Formation

It is axiomatic that formation of a valid contract includes an offer, acceptance, and consideration. The latter two elements are at issue here.

#### 1. Consideration

■ The Court finds it necessary to begin its analysis by addressing two of Defendant's arguments regarding the existence of consideration for the arbitration agreement. "Consideration is established by a showing of either detriment to the promisee or benefit to the promisor." *Nat'l Mortgage Warehouse, LLC v. Bankers First*, 190 F.Supp.2d 774, 784 (D.Md. 2002). Defendant has argued that by remaining employed by ACS after April 12, 2002, Plaintiff's continued employment constituted sufficient consideration. The Maryland Court of Appeals has, however, explicitly stated that continued employment cannot constitute consideration for an arbitration agreement. In *Cheek v. United Healthcare of the Mid–Atlantic*, 378 Md. 139, 835 A.2d 656 (2003), the court explained that, "[Defendant]'s employment or continued employment of [Plaintiff] does not act as consideration in return for [Plaintiff]'s promise to arbitrate." 835 A.2d at 666. Admittedly, the court in *Cheek* based its determination that the arbitration agreement was unenforceable, in large part, on the employer's blatant ability to change, alter, or opt out of the arbitration agreement. The Maryland Court of Appeals, nevertheless, made clear that continued employment was not adequate consideration for an arbitration agreement. Accordingly, this Court must reject ACS's contention that Mr. Shaffer's continued employment constituted consideration for entering an arbitration agreement.

■ The Court finds more persuasive Defendant's contention that the actual agreement to arbitrate may, in and of itself, constitute sufficient consideration. The Fourth Circuit has made clear that, under Maryland law, an agreement to arbitrate is sufficient consideration. *See Johnson*, 148 F.3d 373. In other words, the fact that two parties agreed to forfeit their right to seek legal relief in the courts and, instead, bind themselves to arbitrate their disputes, constitutes consideration for the arbitration agreement. Specifically, in *Johnson* the court reiterated its earlier holding in *O'Neil* (interpreting North Carolina law), stating that under Maryland law, " '[a] mutual promise to arbitrate constitutes sufficient consideration for [the] arbitration agreement.' " *Id.* (quoting *O'Neil*, 115 F.3d at 275).

As such, under *Johnson*, the relevant determination to be made in the instant case is whether Plaintiff's continued employment and/or alleged signing of a document acknowledging receipt of the Employee Manual constituted acceptance, such that an arbitration contract was formed.[2]

### B. Acceptance

Defendant claims that the following actions by Plaintiff constituted acceptance of an agreement to arbitrate: (1) Plaintiff signed a document indicating he had received and agreed to be bound by an employee handbook containing a brief section

---

**2.** Plaintiff also argues that he is entitled to a judicial forum and jury trial because: (1) he did not knowingly or voluntarily waive his right to a judicial forum; and (2) his right to a jury trial is fundamental based on the nature of this claim. As stated *supra*, the Court agrees with the Eastern District of New York's conclusion that the Jury System Improvement Act is subject to arbitration under the FAA. *See supra* at 3 (citing *McNulty*, 871 F.Supp. at 569). With this in mind, the Court expresses reservations about these arguments. The Court, however, will reserve any significant discussion on these issue at this time.

on the DRP; and (2) Plaintiff opted to continue his employment after the April 12, 2002 deadline provided by ACS.

On June 6, 2004, Plaintiff signed an Employee Guidebook Acknowledgment form which stated that Plaintiff had reviewed the May 2002 Employee Guidebook and agreed to comply with the policies and practices therein. *See* Def. Ex. E. The pertinent language on the DRP program appeared on page 56 of the seventy-one page guidebook, and provided as follows:

> ACS had adopted a Dispute Resolution Plan as the exclusive means of resolving the majority of work-related problems. Its purpose is to give employees flexible options for airing and settling almost every kind of workplace conflict … from minor, everyday misunderstandings to violations of legally protected rights. For any questions regarding this process or to file a complaint please contact Human Resources or the ombudsman at *ombudsman@acs-inc.com* or call 866–667–9733.

Pl.Ex. D.

■ Defendant contends that Plaintiff's signed acknowledgment constituted acceptance of the DRP policy, and therefore, an agreement to arbitrate employment claims. In support of this argument, Defendant relies heavily on the Fourth Circuit's language in *O'Neil.* The instant case, however, is clearly distinguishable from *O'Neil.* In *O'Neil,* the Plaintiff signed an acknowledgment form reflecting his receipt of an employee handbook *and* agreeing to submit all employment disputes to arbitration. *See O'Neil,* 115 F.3d at 273. Indeed, in that case, the form actually contained an arbitration clause stating, in pertinent part: "I also understand that as a condition of employment and continued employ-

ment, I agree to submit any complaints to the published process and agree to abide by and accept the *final decision* of the arbitration panel as ultimate resolution of my complaints for any and all events that arise out of employment or termination of employment." *Id.* In the instant case, the acknowledgment form Plaintiff signed clearly did not include a direct acknowledgment and acceptance of an arbitration policy. Indeed, the form does not mention the DRP or arbitration. As such, the Court finds that *O'Neil* is inapposite to the instant case. The Court is unwilling to bind Plaintiff to arbitration merely because he acknowledged receiving an employee handbook containing seven (7) lines that discuss a dispute resolution program. In fact, the section discussing the DRP conspicuously fails to mention that employees are *required* to submit employment-related matters to arbitration. As such, this Court finds that the signed employee handbook acknowledgment does not constitute acceptance of an agreement to arbitrate.

■ Defendant also maintains that Plaintiff's decision to remain employed by ACS after April 12, 2002 constituted acceptance of an agreement to arbitrate. The Court finds this argument unpersuasive. In support of its argument, Defendant points the Court to case law in various jurisdictions, none of which have precedential weight in this Court. Indeed, the two cases for which Defendant provides any significant discussion are unpublished opinions construing Tennessee and Pennsylvania law. *See Leonard v. Clear Channel Communications,* 1997 WL 581439 (W.D.Tenn. July 23, 1997); *Wilson v. Darden Restaurants, Inc.,* 2000 WL 150872, 2000 U.S. Dist. LEXIS 1274 (E.D.Pa. Feb. 11, 2000).[3] The Court is unwilling to ex-

---

**3.** Neither party has presented Maryland case law on this exact point, and the Court's re- view of Maryland case law for instructive cases was unsuccessful.

tend this reasoning to the instant case. The decision to forfeit one's right to a judicial forum is significant and requires a more affirmative action that simply continued employment. The Court is not convinced that Plaintiff bound himself to an arbitration agreement—particularly, where he has not signed an explicit consent or acknowledgment form—simply because he did not quit his job by a certain date.[4]

## IV. Conclusion

In accordance with Maryland and Fourth Circuit case law, the Court finds that: (1) continued employment does not, by itself, constitute consideration for an arbitration agreement; and (2) an agreement by both parties to arbitrate may be sufficient consideration. On the record before the Court now, however, the Court is not persuaded that the parties actually entered into an agreement to arbitrate. As such, the Court will deny Defendant's motion. As discovery has been stayed pending resolution of this motion, the Court will issue a revised scheduling order.

---

4. The Court is also unpersuaded by Defendant's contentions that Plaintiff agreed to submit claims to arbitration because he participated in a training program that included a component on the DRP. *See* Pl.Ex. The DRP component does not indicate that employees have waived their right to a judicial forum. *Id.* In addition, the Court is unwilling to read *knowledge* of the existence of a DRP program as acceptance of an agreement to arbitrate.