810 A.2d 498

John A. MATTINGLY, Sr.,

v.

HUGHES ELECTRONICS CORPORATION, et al.

No. 2169, Sept. Term, 2001.

Court of Special Appeals of Maryland.

Nov. 4, 2002.

John A. Mattingly, Jr. (Baldwin, Briscoe & Mattingly, Chtd., on the brief), Lexington Park, for appellant.

Patrick J. Attridge (King & Attridge, Rockville, Steven E. Bledsoe, Stephen H. McClain, Nathan R. Scott and Kirkland & Ellis, Los Angeles, CA, on the brief), for appellees.

Argued before SONNER, ADKINS, CHARLES E. MOYLAN, JR. (Retired, Specially Assigned), JJ.

ADKINS, Judge.

In an effort to initiate a class action lawsuit, John A. Mattingly, Sr., appellant, sued DIRECTV, Inc. and its parent company, Hughes Electronics Corporation ("Hughes"), appellees, for charging an illegal $2.81 late fee to his account for satellite television services. The Circuit Court for St. Mary's County agreed with DIRECTV and Hughes that Mattingly is bound by an arbitration clause that DIRECTV inserted into its standard "Customer Agreement" approximately one month after Mattingly subscribed to its service, and dismissed the complaint without prejudice, to allow arbitration of the dispute.

In this appeal, Mattingly challenges that dismissal. He raises numerous issues, which we condense and restate as follows:

I.   Did the circuit court err in holding that Mattingly agreed to the arbitration clause by failing to cancel his DIRECTV service?

II.  Did the circuit court err in holding that Mattingly agreed to arbitrate his claims against Hughes, who was not a party to the agreement, but merely the corporate parent of DIRECTV?

III. Is the arbitration clause unconscionable?

IV.  Did the circuit court err in rejecting Mattingly's efforts to enforce an alleged "settlement agreement"?

We shall hold that the circuit court erred in finding that Mattingly agreed to an amendment adding the arbitration clause because there is no evidence in this record to show that DIRECTV gave him "written notice describing the change," as required under the terms of its customer agreement. For this reason, we will reverse the judgment in favor of DIRECTV. As to Hughes, however, we shall affirm the judgment, because Mattingly has not stated a claim upon which relief could be granted against Hughes.

Our decisions on the first two issues make it unnecessary to reach Mattingly's alternative contention that the arbitration

clause is unconscionable. As to the so-called "settlement agreement," we conclude that the court correctly denied relief.

## FACTS AND LEGAL PROCEEDINGS

After purchasing satellite television equipment at Circuit City in Waldorf, Mattingly subscribed to DIRECTV's satellite television service. In a February 20, 1997 telephone call, he agreed to accept DIRECTV service subject to the terms of a customer agreement that would later be mailed to him. DI-RECTV activated the satellite service while Mattingly was still on the telephone.

The next day, DIRECTV sent Mattingly an invoice, along with a "Customer Agreement" effective "August 28, 1996, until replaced" (the "1996 Agreement"). This agreement stated that *"Customer's receipt of services constitutes Customer's acceptance of and agreement to all terms and conditions of this Agreement."* One of those conditions was a "change of terms" clause, which provided:

> DIRECTV reserves the right to change these terms and conditions .... If any changes are made, [DIRECTV] will send you a written notice describing the change and its effective date. If a change is not acceptable to you, you may cancel your service. If you do not cancel your service, your continued receipt of any service is considered to be your acceptance of that change.

Another term of the 1996 Agreement was that Mattingly agreed that "if [his] payment is not received by DIRECTV before [his] next statement is issued, [he] may be charged an Administrative Late Fee" of up to $5.00.

Less than a month after Mattingly's subscription began, on March 18, 1997, DIRECTV mailed a new Customer Agreement to Mattingly (the "1997 Agreement"). The 1997 Agreement differed from the 1996 Agreement in that it included an arbitration clause. That clause stated that any claim "arising out of, or relating to, this Agreement or any services provided by DIRECTV which cannot be settled by the parties shall be resolved according to binding arbitration[.]" It is undisputed

that Mattingly did not cancel his DIRECTV service, and indeed, that he has continued to be a DIRECTV customer.

By invoice dated July 17, 1999, DIRECTV charged Mattingly a "late fee" of $2.81 for a "past due amount" of $56.12. In the "Terms and Conditions," "Administrative Late Fee," and other clauses printed on the back of DIRECTV's invoice, there is no mention of arbitration.

Mattingly paid the July 1999 late fee and his outstanding balance, then filed suit in an attempt to initiate a class action on behalf of other subscribers challenging the legality of the late fee. On August 6, 1999, he sued DIRECTV and Hughes claiming that (1) the DIRECTV invoices were mailed so late in the month that there was an unreasonably or unconscionably short period in which to make timely payment, resulting in frequent charges for an "administrative late fee," and (2) there was no reasonable relationship between the late payment fee and the actual administrative expenses incurred in processing late payments.

On September 7, 1999, Mattingly amended his complaint, seeking certification as a class action. He asserted four counts in his First Amended Class Action Complaint: (1) violations of the Maryland Consumer Protection Act, *codified at* Md.Code (1975, 2000 Repl.Vol., 2001 Cum.Supp.), § 13–101 *et seq.* of the Commercial Law Article ("CL"); (2) violations of Art. III, section 57 of the Maryland Constitution, which sets the legal rate of interest at six percent;[1] (3) violations of CL

---

1. This claim reflects the Court of Appeals' decision in *United Cable Television of Baltimore Ltd. P'ship v. Burch*, 354 Md. 658, 681, 732 A.2d 887 (1999), holding that late fees charged by cable television providers could not exceed the legal rate of interest. In response to that decision, the General Assembly enacted statutory provisions regulating and authorizing late fees in consumer contracts such as the one at issue in this case. *See* 2000 Md. Laws, ch. 59; *Dua v. Comcast Cable of Maryland, Inc.*, 370 Md. 604, 613–16, 805 A.2d 1061 (2002). This legislation stated that it would have retroactive effect. The retroactivity provision, in turn, extinguished Mattingly's cause of action in this case. As both parties here agree, however, Mattingly's claim has been revived to the extent that it covers claims arising before June 1, 2000, because the Court of Appeals recently struck down the retroactivity provision as a

section 2–718, which prohibits penalties disguised as liquidated damages; and (4) breach of the implied covenant of good faith and fair dealing.

DIRECTV and Hughes removed the case to federal court, but that court dismissed it on the ground that the claim did not meet the $75,000 amount in controversy requirement for federal diversity jurisdiction. When the case returned to circuit court, DIRECTV and Hughes promptly moved to dismiss Mattingly's claims on the ground that they are arbitrable, or in the alternative, to stay the proceedings and compel arbitration. After a hearing on the motion, the court agreed that, under the terms of the 1997 Agreement and subsequent agreements, Mattingly was obligated to arbitrate his claims against both DIRECTV and Hughes. From a judgment dismissing his complaint without prejudice, Mattingly noted this timely appeal.

## DISCUSSION

### I.

### The Circuit Court Erred In Finding That Mattingly Knowingly Agreed To Arbitrate His Claims Against DIRECTV

Mattingly argues that the circuit court erred in concluding that he agreed to arbitrate his claims against DIRECTV. He concedes that, beginning with the 1997 Agreement that took effect less than one month after he subscribed to DIRECTV service, there was an arbitration clause in DIRECTV's customer agreement. He claims, however, that he did not knowingly agree to DIRECTV's addition of that clause. For this reason, he argues, his continued subscription to DIRECTV's services did not constitute his consent to arbitration.

■ The Federal Arbitration Act ("FAA"), 9 U.S.C. § 2, states that "an agreement in writing to submit to arbitration

---

violation of both the Maryland Declaration of Rights and the Constitution. See Dua, 370 Md. 604, 610–11, 805 A.2d 1061.

an existing controversy arising out of ... a contract [involving interstate commerce] ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." The FAA is applicable to private contracts made and enforced in Maryland when, as in this case, the contract affects interstate commerce. *See Long v. Silver*, 248 F.3d 309, 315–16 (4th Cir.), *cert. denied,* —— U.S. ——, 122 S.Ct. 213, 151 L.Ed.2d 151 (2001); *Bischoff v. DirecTV, Inc.*, 180 F.Supp.2d 1097, 1102 (C.D.Cal.2002).

■■■■ Under the FAA, the question of whether the parties agreed to arbitrate the dispute in question is a matter of state law governing the formation of contracts. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943–44, 115 S.Ct. 1920, 1924, 131 L.Ed.2d 985 (1995). Under both Maryland and federal law, arbitration is a purely consensual and contractual means of resolving disputes. *See id.*, 514 U.S. at 947, 115 S.Ct. at 1925; *Curtis G. Testerman Co. v. Buck*, 340 Md. 569, 579, 667 A.2d 649 (1995); Md.Code (1974, 1998 Repl.Vol.), § 3–207 of the Courts & Judicial Proceedings Article ("CJ"). For this reason, courts cannot compel arbitration unless the parties have voluntarily agreed to arbitrate their disputes.

It is axiomatic that an arbitration panel derives it authority to decide a given dispute from the disputing parties themselves.... " 'The question is one of intention, to be ascertained by the same tests that are applied to contracts generally.... No one is under a duty to resort to ... [arbitration] tribunals, however helpful their processes, except to the extent that he has signified his willingness.' " ... [A]bsent an arbitration agreement between the parties, an arbitration panel cannot validly assert jurisdiction to decide a dispute between them.

*Stephen L. Messersmith, Inc. v. Barclay Townhouse Assocs.*, 313 Md. 652, 658, 547 A.2d 1048 (1988)(quoting *Continental Milling & Feed Co. v. Doughnut Corp. of America,* 186 Md. 669, 675, 48 A.2d 447 (1946)).

■■■■ "Whether there is an agreement to arbitrate the parties' dispute is a legal question of contract interpretation."

*NRT Mid–Atlantic, Inc. v. Innovative Props., Inc.,* 144 Md. App. 263, 279, 797 A.2d 824 (2002). When the existence of an arbitration agreement is in dispute, that dispute must be resolved by a court. *See, e.g.,* CJ § 3–207(b)(under Maryland Uniform Arbitration Act, "if the opposing party denies existence of an arbitration agreement, the court shall proceed expeditiously to determine if the agreement exists"); *NRT Mid–Atlantic,* 144 Md.App. at 278, 797 A.2d 824 (petition asking court to compel arbitration, when filed in response to complaint filed in court, is subject to provisions of Maryland Uniform Arbitration Act). When there is a dispute of fact material to determining whether there is an agreement to arbitrate, the court resolves that dispute before determining whether the agreement to arbitrate exists. *See Stephen L. Messersmith,* 313 Md. at 664, 547 A.2d 1048 ("After receiving ... evidence, the court shall decide by a preponderance of the evidence whether an agreement to arbitrate exists").

Mattingly asks us to hold that the circuit court erred in finding that he agreed to arbitrate his claims against DIRECTV. He first argues that a consumer cannot, merely by virtue of a "change of terms" clause in a customer agreement, "constructively accept" an amendment adding an arbitration clause. In his brief, Mattingly broadly suggests that as a matter of public policy, DIRECTV should not be permitted to amend its customer agreement by simply mailing a revised customer agreement that contains a new arbitration clause, in the same envelope along with its standard monthly billing invoice, with no other mention of arbitration. In effect, he advocates, courts should hold that, as a matter of law, and regardless of the contract terms they accepted when purchasing the product or service, consumers must be given a separate written notice conspicuously pointing out that the terms of the customer agreement have been changed to add an arbitration clause.

DIRECTV interprets this argument as a broad attack on the entire concept of "constructive acceptance," and warns that Mattingly's argument "threaten[s][a] basic tool of modern commerce." Citing the strong public policy favoring arbitra-

tion, it seeks to preserve the "method of contract formation" by which "[t]he business provides the product or service and sends detailed contract terms for the customer's review," and then the customer decides whether to reject the contract terms by returning the product or cancelling the service. DIRECTV asserts that this is a time-honored, "simple," "convenient," and "common" method of consumer contracting that has been upheld in "courts across the country." DIRECTV also posits that the logical corollary to forming an agreement through "constructive acceptance" is that amending such agreements also may be accomplished by the same "constructive acceptance" method. According to DIRECTV, Mattingly accepted not only the original 1996 Agreement in this manner, but also all of its subsequent customer agreements, including the 1997 Agreement that added the arbitration clause.

The fairness and wisdom of this "constructive acceptance" method for forming and amending consumer contracts has been the subject of scholarly, legislative, and judicial debate.[2] It certainly raises important and interesting questions. Despite the parties' invitations to tackle some of them, however,

---

2. For discussions of these concerns, see for example *Powertel, Inc. v. Bexley*, 743 So.2d 570, 574–77 (Fla.Ct.App.1999), *rev. denied*, 763 So.2d 1044 (Fla.2000)(holding that change of terms clause cannot be used to add arbitration clause to cellular telephone service contract because resulting clause is procedurally and substantively unconscionable under Florida law); *Badie v. Bank of America*, 67 Cal.App.4th 779, 79 Cal. Rptr.2d 273, 291 (1998), *rev. denied*, 1999 Cal. LEXIS 1198 (holding that bank could not use "change of terms" clause in credit cardholder agreement to unilaterally add arbitration clause via a "bill stuffer" notice included in envelope with regular monthly billing statement); Anne Brafford, Note, *Arbitration Clauses in Consumer Contracts of Adhesion: Fair Play or Trap for the Weak and Unwary?*, 21 Iowa J. Corp. L. 331 (Winter 1996)(summarizing arguments in favor of and against enforcing arbitration clauses in consumer contracts); Jeremy Senderowicz, *Consumer Arbitration and Freedom of Contract: A Proposal to Facilitate Consumers' Informed Consent to Arbitration Clauses in Form Contracts*, 32 Columbia J.L. & Soc. Probs. 275, 299–306 (Spring 1999)(proposing amendment to FAA to ensure disclosure necessary to obtain informed consent to arbitration clause in consumer contract); Matthew C. MacDonald & Kirkland E. Reid, *Arbitration Opponents Barking Up the Wrong Branch*, 62 Ala. Law. 56, 61 (Jan.2001)(arguing that opponents of arbitration clauses in consumer contracts should petition the legislature to correct perceived abuses).

we will not do so. To resolve this appeal, we need not decide whether Mattingly's global attack on this procedure for amending a consumer service agreement is legally or socially meritorious. We need only to decide a simple but dispositive matter of contract law raised by Mattingly.

Mattingly argues that, as a matter of fact, DIRECTV did not "send [him] a written *notice describing the change* and its effective date," as the 1996 Agreement required "[i]f any changes [were] made" to it. (Emphasis added.) Absent such notice, Mattingly contends, he did not "constructively accept" the arbitration clause. We agree. For the reasons detailed below, we conclude that, even assuming that the "change of terms" clause in DIRECTV's customer agreements permitted DIRECTV to obtain Mattingly's "constructive acceptance" of the newly added arbitration clause, DIRECTV failed to avail itself of the method that it established for doing so.

According to an affidavit submitted by DIRECTV in support of its motion to dismiss, DIRECTV notified Mattingly of the new arbitration clause by sending him a copy of the 1997 Agreement in its March 1997 mailing. That mailing included its standard monthly billing invoice, which did not mention arbitration or otherwise alert Mattingly that changes had been made to the customer agreement. In fact, the only place where arbitration was mentioned was in the newly added arbitration clause itself. The clause was printed in regular type at paragraph 23, as a new last paragraph in the agreement. The new arbitration clause appears to be the only significant difference between the 1996 and 1997 Agreements.

■ DIRECTV argues that the circuit court correctly concluded that by sending Mattingly the 1997 Agreement containing the arbitration clause, it gave Mattingly notice of the newly added arbitration clause. Thus, we must decide whether the 1997 Agreement that DIRECTV mailed to Mattingly along with its regular March 1997 monthly billing invoice gave Mattingly "written notice describing the change." We conclude that it did not.

We read the terms of the 1996 Agreement objectively, through the eyes of a "reasonable person." *See, e.g., G.M.A.C. v. Daniels,* 303 Md. 254, 261, 492 A.2d 1306 (1985)("the true test of what is meant is ... what a reasonable person in the position of the parties would have thought" the contract meant). In doing so, we look to the ordinary meaning of the terms used in the agreement. *See Curtis G. Testerman,* 340 Md. at 580, 667 A.2d 649; *The Redemptorists v. Coulthard Svcs., Inc.,* 145 Md.App. 116, 144–45, 801 A.2d 1104 (2002). In this case, our focus is on the "notice describing the change" language in the change of terms clause. ·

A "notice" is commonly understood to be "a note, placard, or the like conveying information or a warning." *The Random House Dictionary of the English Language* 986 (unabr.1973). "Describing" something is "to tell or depict in written or spoken words" or to "give an account of." *Id.* at 390. A "change" occurs when "the content ... of (something)" is made "different from what it is[.]" *Id.* at 246.

Applying the ordinary and common meaning of these words, we conclude that DIRECTV agreed that Mattingly would be bound by any changes that it made to the 1996 Agreement only if DIRECTV gave him some sort of written notice advising him about a particular change, and identifying that change clearly enough that he could find and review it in the revised agreement. Thus, DIRECTV obligated itself to send Mattingly enough information that he could exercise an informed decision as to whether he wished to continue DIRECTV service, with the understanding that he would be required to arbitrate any claims he might have against DIRECTV. Whether it did so by a separate mailing, or by a separate document sent along with the new agreement and the billing invoice, or otherwise by a separate provision in that invoice or another document, DIRECTV had a contractual duty to give Mattingly some written warning, (*i.e.,* "notice") that the new 1997 Agreement included a new arbitration clause significantly limiting his right to litigate in court (*i.e.,* "describing the change").

We reject DIRECTV's contention that the 1997 Agreement itself constituted adequate notice of this amendment. Merely sending Mattingly a new customer agreement, without identifying in any manner the subject matter, substance, or location of that change, cannot reasonably be characterized as "sending a written notice describing the change." Indeed, that construction would effectively negate that entire notice provision, by allowing DIRECTV to change the terms of its customer agreement without making any effort whatsoever to "describ[e] the change."

At oral argument, DIRECTV conceded that there is nothing else in this record to establish that it sent Mattingly any other document that could be construed as "a notice describing the change." In the absence of any evidence that DIRECTV gave Mattingly such notice, we hold that the circuit court erred in concluding that Mattingly "constructively agreed" to arbitrate his claims against DIRECTV.[3]

Our holding is consistent with established principles of contract law. To be sure, under Maryland law, parties may change the terms of their contract by remaining silent if, in light of a previous course of dealing, the offeree was obligated to notify the offeror that he is not willing to accept the revised terms. *See Int'l Bhd. of Teamsters v. Willis Corroon Corp.*, 369 Md. 724, 738 n. 3, 802 A.2d 1050 (2002)(citing *Restatement (Second) of Contracts* § 69 (1981)); *Porter v. Gen. Boiler Casing Co.*, 284 Md. 402, 411–12, 396 A.2d 1090 (1979). When that course of dealing includes an explicit agreement that the offeree's continuation of a contractual relationship after receiving notice of the proposed change constitutes acceptance of the change, courts may enforce that agreement by finding that the offeree's silence constituted either actual or constructive acceptance of the contract change. *See Willis Corroon*, 369 Md. at 738 n. 3, 802 A.2d 1050.

---

**3.** We need not address Mattingly's alternative argument that, under the terms of DIRECTV's later Customer Agreements, he is obligated to arbitrate his claims only if "informal resolution" fails to resolve them.

■ In order for the offeree's silence to be an assent to the revised terms of the contract, however, the offeree must have had actual or constructive knowledge that there was a proposal to change the contract terms. Even without a specific provision governing the nature of the notice to be given, we have required that notice of the change in contract terms must at least make the offeree aware that there *is* a change.[4] *See, e.g., Dominion Nat'l Bank v. Sundowner Joint Venture,* 50 Md.App. 145, 167, 436 A.2d 501 (1981)(refusing to "stretch[ ] fiction" of constructive notice when there is no notice of "a most disadvantageous change in the contract that is in no way reflected or even hinted at in the new agreement").

In this case, we need not decide whether the mere mailing of a new customer agreement, with no accompanying notice that it changed the terms of a prior agreement, met the minimum threshold for notice, because here, the existing agreement between DIRECTV and Mattingly had a higher notice threshold. That agreement specifically assured Mattingly that, "[i]f any changes are made," DIRECTV would "send [him] a notice describing the change and the effective date." We may not simply ignore that language.

---

**4.** We are aware that under Maryland's common law outside the arbitration context, absent some specific agreement or statute governing the nature of the notice to be given, an offeror may not be obligated to give an offeree a specific description of the nature of the contract changes.

"The rule [that an offer may be communicated by conduct or by words, but must be communicated] does not mean that all the terms of the offer must be actually known by the offeree. A man may give his assent to terms when the knowledge of them is merely imputed to him, upon the general principle that notice is often equivalent to knowledge." "The acceptance of a paper which purports to be a contract sufficiently indicates an assent to its terms whatever they may be, and it is immaterial that they are, in fact, unknown." Therefore, if [the offeree's] actions were sufficient to constitute acceptance, that acceptance would extend to all the provisions of the written contract.

*Porter v. Gen. Boiler Casing Co.,* 284 Md. 402, 411–12, 396 A.2d 1090 (1979). We leave for another day the issue of whether this principle would apply to the addition of an arbitration clause when there was no contractual obligation to describe the change in terms.

We are not persuaded otherwise by the cases that DIRECTV cites in support of the proposition that Mattingly accepted the terms of the 1997 Agreement by continuing to receive DIRECTV service. A number of these cases turned on whether the consumer "constructively accepted" an arbitration clause that was in the original customer agreement in effect at the time the purchase was made; in some, the agreement was delivered with the product, while in others it was sent to the customer shortly after the purchase.

For example, in *Hill v. Gateway 2000, Inc.*, 105 F.3d 1147 (7th Cir.), *cert. denied*, 522 U.S. 808, 118 S.Ct. 47, 139 L.Ed.2d 13 (1997), the question was whether the consumer who ordered a computer was bound by an arbitration clause in the customer agreement that was delivered with the computer, on the theory that consumer agreed in advance to the terms of the agreement, one of which stated that the consumer accepted those terms by failing to return the computer within 30 days. The Seventh Circuit decided that Hill had accepted the arbitration clause by retaining the computer. *See id.* at 1149. *See also Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 590, 111 S.Ct. 1522, 1525, 113 L.Ed.2d 622 (1991)(question was whether consumer had sufficient notice of disputed forum selection clause in contract that cruise company sent when it delivered cruise tickets); *ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447, 1451 (7th Cir.1996)(question was whether buyer accepted terms of shrinkwrapped license in box containing software); *Bischoff v. DirecTV, Inc.*, 180 F.Supp.2d 1097, 1103-04 (C.D.Cal.2002)(question was whether DIRECTV subscriber accepted terms of customer agreement, which included an arbitration clause and was mailed to him after he subscribed over telephone).

None of the cited cases involved the subsequent addition of an arbitration clause through "constructive acceptance." Notably, DIRECTV has cited no "arbitration amendment" case to support the proposition it advocates in this case—that a consumer accepts the terms of an amendment adding an arbitration clause to a customer agreement merely by continuing to accept that service, ***without regard to whether the***

*consumer received notice of that amendment in accordance with the change of terms provision in the customer agreement.*

The "arbitration amendment" cases cited by DIRECTV do not interpret comparable contract language requiring "notice describing the change." *See, e.g., Bank One, N.A. v. Coates,* 125 F.Supp.2d 819, 826–27 (S.D.Miss.2001)(cardholders did not dispute that they actually received detailed notice of amendment adding arbitration clause to cardholder agreement); *Marsh v. First USA Bank, N.A.,* 103 F.Supp.2d 909, 917–19 (N.D.Tex.2000)(bank established by affidavits, deposition testimony, and documents that it provided detailed notice to credit cardholders that it was amending its cardholder agreement to add an arbitration clause, by placing a notice insert into two separate monthly billing statements, and plaintiffs failed to establish that they did not receive these notices); *Herrington v. Union Planters Bank, N.A.,* 113 F.Supp.2d 1026, 1031–32 (S.D.Miss.2000), *aff'd,* 265 F.3d 1059 (5th Cir.2001)(bank adequately notified account holders about newly added arbitration provision by sending revised deposit account agreement with cover letter advising that it "contained 'Important information about [the depositor's] account'"); *Stiles v. Home Cable Concepts, Inc.,* 994 F.Supp. 1410, 1413–17 (M.D.Ala.1998)(satellite television financier notified subscriber/borrower of newly added arbitration clause by sending detailed written notice of change, including opt out provisions).

In all of these cases, courts found that the customer received adequate notice of the amendment, as required under the terms of the original customer agreement. In doing so, they inherently recognize as a minimum threshold to enforcing the arbitration clause that there must be adequate notice alerting the consumer to its presence.

Similarly, we are not persuaded by DIRECTV's warning about the dire consequences of holding that Mattingly cannot be compelled to arbitrate his claims. Our decision to enforce the notice requirement of the 1996 Agreement does not threaten a "basic tool of modern commerce." Rather, it affirms one

of the fundamental precepts underlying all modern commercial transactions—that courts will enforce the terms of the parties' contract as they wrote it. Here, DIRECTV, as "master of the offer, ... invite[d] acceptance by conduct, and ... propose[d] limitations on the kind of conduct that constitute[d] acceptance." *See ProCD*, 86 F.3d at 1452. Consequently, DIRECTV cannot be heard to complain about our enforcement of the notice limitation that it created as a condition precedent to Mattingly's acceptance of the new arbitration clause.

Nor does our decision impose a commercially onerous burden on DIRECTV. We agree that "it would be impossible for a company like DIRECTV to negotiate each and every term of its contracts over the phone[.]" But our decision does not require DIRECTV to engage in individualized negotiations in order to amend its customer agreement. All the company had to do was to send a notice clearly telling its customers that the new customer agreement featured a new arbitration clause.

Finally, our decision does not undermine the strong federal and state policy favoring arbitration, under which arbitration clauses are to be liberally construed in favor of arbitrating. As the Court of Appeals has stated, that policy does not apply when the issue before the court is whether an agreement to arbitrate exists. *See Long*, 248 F.3d at 316; *Curtis G. Testerman*, 340 Md. at 580–81, 667 A.2d 649.

For these reasons, we hold that, because DIRECTV failed to establish that Mattingly received notice that DIRECTV had added an arbitration clause to its customer agreement, Mattingly cannot be compelled to arbitrate his claims against DIRECTV. We shall vacate the circuit court's order dismissing Mattingly's claims against DIRECTV.

## II.

### The Court Properly Dismissed Mattingly's Claims Against Hughes

Mattingly asks us to hold that because Hughes was not a party to any of the customer agreements, it cannot claim the

benefit of any arbitration agreement that may have existed between Mattingly and DIRECTV. For this proposition, he relies on *Hartford Accident & Indem. Co v. Scarlett Harbor Assocs. Ltd. P'ship*, 346 Md. 122, 127, 695 A.2d 153 (1997), in which the Court of Appeals explained that,

"[i]n the absence of an express arbitration agreement, no party may be compelled to submit to arbitration in contravention of its right to legal process." An arbitration agreement cannot impose obligations on persons who are not a party to it and do not agree to its terms. (Citations omitted.)

*See also Curtis G. Testerman*, 340 Md. at 579–80, 667 A.2d 649 (holding that individual who signed, as agent for a fully disclosed corporate principal, contract with arbitration clause did not thereby agree to arbitrate claims in his individual capacity); *The Redemptorists v. Coulthard Svcs., Inc.*, 145 Md.App. 116, 135, 801 A.2d 1104 (2002)(holding that plaintiff who sued a corporate defendant with whom it had agreed to limited arbitration, as well as two of its individual principals, could not be compelled to arbitrate its claims against principal merely because claims were based on common facts and circumstances).

■■■ The circuit court did not explain the reason that it entered judgment in favor of Hughes. Hughes urges us to affirm the dismissal because Mattingly never advocated to the circuit court the "no contract" rationale that it now offers on appeal.[5] Our review of Mattingly's complaint, motion papers,

---

5. Citing federal cases, Hughes contends that "[w]hen the charges against a parent company and its subsidiary are based on the same facts and are inherently inseparable, a court may refer claims against the parent to arbitration even though the parent is not formally a party to the arbitration agreement." *J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.*, 863 F.2d 315, 320–21 (4th Cir.1988); *see also Long v. Silver*, 248 F.3d 309, 320 (4th Cir.), *cert. denied*, —— U.S. ——, 122 S.Ct. 213, 151 L.Ed.2d 151 (2001)(following *J.J. Ryan & Sons* because "we see little difference between a parent and its subsidiary and a corporation and its shareholders, where, as here, the shareholders are all officers and members of the Board of Directors and, as the only shareholders, control all of the activities of the corporation").

and oral argument to the circuit court not only confirms Hughes' contention, but also reveals that Mattingly has not asserted any cognizable claim against Hughes.

In fact, Mattingly's only direct reference to Hughes in the First Amended Class Action Complaint is in the allegations regarding "Parties and Jurisdiction," where Mattingly states that Hughes is DIRECTV's "parent corporation," and that it "acquired" two other satellite broadcasting companies (United States Satellite Broadcasting Company, Inc. and PrimeStar, Inc.), neither of which Mattingly dealt with. The legal significance of those acquisitions is not clear because Mattingly also alleges that it was actually DIRECTV that "consolidated and/or merged with" those two companies in 1999. In the ensuing "Class Action Allegations," Mattingly asserts that the putative class "comprise[s] thousands of residential and commercial subscribers of the Defendant's [sic] DIRECTV, INC., UNITED STATES SATELLITE BROADCASTING COMPANY, INC., and PRIMESTAR, INC. satellite television services and programming throughout the State of Maryland[.]"

Yet in none of the ensuing four causes of action did Mattingly actually identify Hughes as a defendant, assert that Hughes did anything wrong, assert any form of vicarious or derivative liability against Hughes, or otherwise request any relief against Hughes. If, as he alleged, DIRECTV "consolidated and/or merged with" both of the other satellite companies, and "regularly conduct[s] business" in their names, then it would be DIRECTV that might be liable for the conduct of those companies.

In three of the four counts (*i.e.*, "Unlawful Liquidated Damages," "Liquidated Damages Impermissible by Statute," and "Breach of Implied Covenant of Good Faith and Fair

---

We need not decide whether this rule or the rule applied in *Scarlett Harbor* and *The Redemptorists* applies to Hughes. Given our conclusion that Mattingly failed to state a claim against Hughes, we will not resolve the question of whether Hughes' status as parent of DIRECTV means that it can be compelled to arbitrate Mattingly's claims.

Dealing"), Mattingly specifically identified DIRECTV as "the Defendant," and asked for a judgment and injunctive relief only "against the Defendant DIRECTV[.]" In the count entitled "Consumer Protection Law" violation, as in the preceding "Class Action Allegations" and "Background Facts" paragraphs of Mattingly's complaint, all references in the allegations and prayer were to a singular "Defendant." The identity of that defendant is clearly DIRECTV because the allegations relate solely to Mattingly's dealings with DIRECTV.

Moreover, in none of his written or oral arguments to the circuit court did Mattingly ever assert any legal basis upon which Hughes could be held liable to Mattingly or to the class. There were no arguments that Hughes was directly liable to Mattingly, or that it was somehow derivatively liable based on DIRECTV's conduct.

In these circumstances, we see no error in the court's decision to dismiss the claims against Hughes without prejudice, because the facts alleged by Mattingly, even if taken as true, failed to state a claim against Hughes. *See* Md. Rule 2–322. When the circuit court does not state its reasons for granting the motion to dismiss, "we should affirm the judgment if our review of the record discloses that the court was legally correct." *Briscoe v. City of Baltimore,* 100 Md.App. 124, 128, 640 A.2d 226 (1994). Our review of the record discloses that the court was legally correct, and therefore we shall affirm its judgment in favor of Hughes.

## III.

### Mattingly's Alternative Defenses

As alternative grounds for reversing the circuit court, Mattingly argues that DIRECTV's arbitration clause is unenforceable because it is unconscionable. He lists four separate reasons that the provision is unconscionable: (1) it requires plaintiffs to pay excessive fees that prevent them from pursuing any remedy; (2) it forces the loser to pay all expenses and attorney's fees; (3) the arbitrator does not have power to

grant all the remedies to which he may be entitled; and (4) it prevents Mattingly from proceeding on a class action basis, thereby denying an effective remedy to class members.

Given our decisions that Mattingly cannot be compelled to arbitrate his claims against DIRECTV, and that he failed to state any claim against Hughes, it is unnecessary for us to resolve these alternative arguments. We note that because they were raised in but not decided by the circuit court, we do have discretion to address them here. *See* Md. Rule 8–131(a). We decline to do so, however, because these issues may never arise again, and, if they do, we consider it more prudent to address them after full consideration and decision by the circuit court. *See Carrier v. Crestar Bank, N.A.,* 316 Md. 700, 725, 561 A.2d 227 (1989); *City of Baltimore v. New Pulaski Co. Ltd. P'ship,* 112 Md.App. 218, 234, 684 A.2d 888 (1996), *cert. denied,* 344 Md. 717, 690 A.2d 523 (1997).

## IV.

### The Circuit Court Properly Declined To Enforce Mattingly's "Settlement Offer"

■■■ Mattingly contends that he has a settlement agreement with DIRECTV and Hughes, and that the circuit court erred in refusing to consider or enforce it. DIRECTV and Hughes counter that the court properly declined to enforce Mattingly's so-called agreement because, as a matter of law, it was not a settlement agreement.

The purported "agreement" consists of language that Mattingly's attorneys drafted, then pasted onto a copy of the 1996 Agreement. To "prove the point" that amending the customer agreement by inserting terms in small typeface into the midst of that agreement, and delivering the revised document without alerting the recipient to the change in terms, cannot fairly be deemed "constructive acceptance" of those terms, Mattingly's attorneys typed the terms of an offer to settle this case for $600,000, which, if not rejected by a certain time and date, was deemed accepted, in the same typeface and format used in DIRECTV's customer agreement. They then pasted this

language over other terms in the 1996 Agreement, which they attached as an exhibit to a copy of an affidavit by DIRECTV's director of customer communications. That affidavit originally had been prepared for and filed in federal court while this case was pending there. In circuit court, DIRECTV included a copy of this affidavit with an unaltered copy of the 1996 Agreement as an exhibit to its motion to dismiss. In opposition to DIRECTV's motion to dismiss, Mattingly attached the same affidavit, but this time with the altered agreement as its exhibit. Mattingly filed this opposition with the altered copy of the 1996 Agreement four days before the hearing on the motion to dismiss. Not until the hearing did Mattingly's attorney refer to the terms of the altered agreement, or otherwise alert DIRECTV's attorney to the settlement offer.

Whatever support this document might add to Mattingly's lack of notice argument, we agree with DIRECTV that the altered document was not an "offer" because DIRECTV and Hughes had no reason to believe that it existed, much less that it was truly intended as a settlement offer. *See Porter,* 284 Md. at 411, 396 A.2d 1090 (an "offer may be communicated by conduct or words, but must be communicated"). The circuit court properly refused to entertain it as such.

**JUDGMENT DISMISSING CLAIMS AGAINST HUGHES ELECTRONIC CORPORATION WITHOUT PREJUDICE AFFIRMED; JUDGMENT DISMISSING CLAIMS AGAINST DIRECTV, INC. VACATED, AND CASE REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID 1/4 BY APPELLANT AND 3/4 BY DIRECTV, INC.**