Wanda L. DAVIDSON,
D.D.S., Plaintiff,

v.

Marvin A. BECKER, D.D.S., Defendant.

No. CIV.A. AW–02–4209.

United States District Court,
D. Maryland,
Southern Division.

March 27, 2003.

Pamela J. White, Carla N. Bailey, Ober, Kaler, Grimes and Shriver, PC, Baltimore, MD, for Plaintiff.

Jeffrey P. Ayres, Thomas H. Strong, Venable, Baetjer, and Howard, LLP, Baltimore, MD, for Defendant.

## MEMORANDUM OPINION

WILLIAMS, District Judge.

Wanda L. Davidson, D.D.S. ("Plaintiff") brought suit against Marvin A. Becker, D.D.S. ("Defendant") pursuant to 42 U.S.C. § 1981 alleging in one count a claim of racial discrimination and unlawful termination. Currently pending before the Court is Defendant's Motion to Dismiss or,

in the Alternative, to Stay Proceedings and Compel Arbitration of Plaintiff's Claims [4]. The motion has been fully briefed by both parties. No hearing is deemed necessary. *See* D. Md. R. 105.6. Upon consideration of the arguments made in support of, and opposition to, the motion, the Court will GRANT the Motion to Stay Proceedings and GRANT-in-part the Motion to Compel Arbitration.

## I. MOTION TO DISMISS

Under Fed. R. Civ. Proc. 12(b)(6), a court should not dismiss a complaint "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The function of a motion to dismiss for failure to state a claim is to test the legal sufficiency of the complaint, and not the facts that support it. *Neitzke v. Williams*, 490 U.S. 319, 326–27, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). The Fourth Circuit has recently stated,

> [A] Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief.

*Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir.1999).

## II. FACTUAL BACKGROUND

The facts necessary for the adjudication of this motion to dismiss are derived from the Complaint and from any documents relied upon or referred to in the Complaint.[1] Plaintiff worked as a full-time

---

1. The Court's job has been made infinitely more difficult by Defendant's assertions of

prostheodontist with Mid–Atlantic Dental Associates ("MADA") from September 1996 until her termination on January 5, 2000. Plaintiff was the only African–American female in the corporate practice. During the course of her employment, she suffered wage reductions to which other employees were not subjected. She complained about these reductions, alleging race discrimination, and she was terminated in January 2000.

Plaintiff's termination was effective on February 4, 2000. After terminating her, Defendant-to whom Plaintiff had complained about previous treatment-tried to re-negotiate an "independent contractor" status with Plaintiff. Plaintiff originally rejected the offer. Defendant made a subsequent offer, whereby Plaintiff would act as an independent contractor and would not receive the benefits of full-time employment. Plaintiff alleges that after beginning work under such a format and despite an agreement to the contrary, Defendant withheld sums of monies which should have been distributed to Plaintiff. Defendant continued to withhold these funds while Plaintiff continued to work as an "independent contractor" until 2001.

In early 2001, Defendant offered Plaintiff a new employment contract with terms that were similarly disadvantageous. From April until June 2001, Defendant withheld compensation from Plaintiff. In the previous year, in or around August 2002, Dental Care Alliance ("DCA") had taken over management responsibilities at MADA. Plaintiff received an employee handbook from DCA and was expected to comply with it. Plaintiff was terminated on July 10, 2001 from her position working on an "independent" basis with MADA. She alleges that Defendant took these actions against her on the basis of race.

## III. ARBITRATION UNDER THE FEDERAL ARBITRATION ACT

Defendant argues that Plaintiff's race discrimination claim should be dismissed or, in the alternative, stayed pending arbitration because Plaintiff was under an agreement to arbitrate all claims arising under her employment relationship with MADA. Plaintiff asserts that she never agreed to arbitrate these claims and that, furthermore, Defendant, a non-signatory to any arbitration agreement between Plaintiff and MADA, can not avail himself of the binding arbitration clause. The first determination for the Court to make is whether the parties did in fact agree to arbitrate any or all of these claims. If the Court finds that they did contract to arbitrate, the Court must then determine whether these race discrimination claims are covered by any such arbitration agreements. Finally, the Court must analyze whether Defendant, a supervisor at MADA

various counter factual allegations made in the motion to dismiss. The Court understands that a motion to compel arbitration lies somewhere in the netherworld between a motion to dismiss and a motion for summary judgment. Nevertheless, as this motion is brought prior to any discovery being taken and prior to any development of the factual record, the Court is compelled to treat this as a motion to dismiss. As such, Defendant's supplementation of the record with various documents not specifically referenced in the Complaint necessarily cause the Court to ignore certain arguments and allegations made by Defendant. *Cf. Maryland Minority Contractor's Ass'n, Inc. v. Maryland Stadium Auth.*, 70 F.Supp.2d 580, 591 (D.Md.1998). For example, Defendant supplements the record with a Complaint and a Court Order from the Circuit Court for Baltimore City. Apparently, Defendant wishes the Court to merely adopt the reasoning of a Court that had different parties and, perhaps, different issues before it. In any event, the Complaint makes no reference whatsoever to another litigation and therefore all references to it are not properly before the Court at this stage.

but a non-signatory to any employment agreement, may call upon the arbitration agreement to compel Plaintiff to arbitrate the claims against him individually.

The Federal Arbitration Act ("FAA") applies to contracts "evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract." 9 U.S.C. § 2. The parties do not dispute that the FAA applies to this dispute. The background principle in analyzing arbitration issues under the FAA is the federal policy which strongly favors arbitration. *See O'Neil v. Hilton Head Hospital*, 115 F.3d 272, 273 (4th Cir.1997)(citing *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)). In line with that policy, "any doubts concerning the scope of the arbitrable issues should be resolved in favor of arbitration ...." *Moses H. Cone*, 460 U.S. at 24–25, 103 S.Ct. 927. Because of this presumption, in a "close-call" on the issue of arbitrability, the Court must decide in favor of sending the parties to arbitration. *See Long v. Silver*, 248 F.3d 309, 316 (4th Cir.2001)(citing *Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co.*, 867 F.2d 809, 812 (4th Cir.1989)). The Court cannot deny a request to arbitrate unless the Court can say with " 'positive assurance' " that the dispute is not covered by the arbitration clause. *Id.* (quoting *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)).

While federal policy favors arbitration, a court must first determine whether the parties actually agreed to arbitrate. "[A]rbitration is a matter of contract and a party can not be required to submit to arbitration any dispute which he had not agreed so to submit." *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986)(quoting *Warrior & Gulf*, 363 U.S. at 582, 80 S.Ct. 1347). It is a matter of state contract law whether parties have contracted to arbitrate. *See Johnson v. Circuit City Stores, Inc.*, 148 F.3d 373, 377 (4th Cir.1998). The Court must apply " 'ordinary state law principles that govern the formation of contracts ....' " *Id.* (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995)). As an analytical framework, therefore, the Court must apply state law principles governing contracts in analyzing formation and federal substantive law in analyzing arbitrability. *See Int'l Paper Co. v. Schwabedissen Maschinen Anlagen GMBH*, 206 F.3d 411, 417, n4 (4th Cir.2000).

### A) Contract to Arbitrate

▮ Defendant/Movant argues that for all charges made in the Complaint, Plaintiff has contracted to arbitrate. Specifically, he argues that she was under an employment agreement which contained an arbitration provision until February 2000 and that, by accepting an employee handbook in her status as employee after her termination, she also assented to ADR procedures in that agreement. Plaintiff does not directly dispute that claims arising prior to February 2000 are subject to an agreement, but she contends that any disputes arising after February 2000 are not covered by any arbitration agreement to which she assented.[2]

---

2. It appears from Plaintiff's opposition to the present motion that she wishes to draw the Court's attention away from any claims deriving prior to termination and towards all claims arising after it. A reading of the Complaint, however, compels the conclusion that her racial discrimination claim encompasses claims against Becker for actions taken before and after termination (as well as the termination itself). The Court must, therefore, an-

" 'Whether there is an agreement to arbitrate the parties' dispute is a legal question of contract interpretation.' " *Mattingly v. Hughes Electronics Corp.*, 147 Md. App. 624, 632–33, 810 A.2d 498 (2002)(quoting *NRT Mid–Atlantic, Inc. v. Innovative Props., Inc.*, 144 Md.App. 263, 279, 797 A.2d 824 (2002)). It is the court's responsibility to decide whether an agreement to arbitrate exists. *See id.* While it appears that MADA and Plaintiff had an agreement to arbitrate while she was an employee there, the Court cannot conclude at this preliminary stage that after her termination by MADA, Plaintiff was under any contract to arbitrate employment-related claims. In order for Plaintiff to have agreed to arbitrate, she must have assented in some way to an agreement to arbitrate. In reviewing the Complaint, however, and any other documents relied upon in the Complaint, the Court cannot find a new agreement-above and beyond the previous employment agreement-in which Plaintiff assented to binding arbitration.

There can be no doubt that up until her termination on February 4, 2000, Plaintiff was working pursuant to an employment contract and that one of the clauses in said contract was for binding arbitration. In her Court filings, she does not appear to directly contest that fact. But when Plaintiff was terminated (and Defendant does not dispute that she was terminated), the legal life of that prior agreement had come to an end.

Defendant, in arguing that Plaintiff was still under contract to arbitrate claims arising after termination, relies almost exclusively on Plaintiff's receipt of an employee handbook from DCA. There are numerous problems, however, with his argument. First, Plaintiff alleges that she didn't receive the handbook until August 2000, which was six months after her employment had terminated. For any disputes that arose between Plaintiff and Defendant from February to August, absent some indication that the employee handbook was meant to apply retroactively, no arbitration agreement applies. Second, even after Plaintiff accepted the employee handbook, there is no indication that she assented to all its terms. In *O'Neil*, the Fourth Circuit held that an employee who had received a handbook, acknowledged its contents, and signed an acknowledgment form had assented to the arbitration clause. *See O'Neil*, 115 F.3d at 273. Here, the Court finds no evidence of Plaintiff's signing of any receipt or of her agreeing to abide by any arbitration clause.[3] The third reason that the Court can not find a contract to arbitrate is because at this stage, the Court has an inadequate record upon which to make such a finding. The key issue in determining whether there was a contract to arbitrate would be whether the parties intended to make such an agreement. Without more in the record, the Court can not make such a determination at this time. Finally, it is not even clear from the Complaint that DCA was Plaintiff's employer. If DCA was

alyze the pre-termination status between the parties as well as any post-termination agreements.

**3.** Defendant argues that Plaintiff did in fact sign an acknowledgment form. The first problem with that argument is that contrary to Defendant's assertions in its motion to dismiss, the Complaint makes no allegations that Plaintiff signed any acknowledgment form.

As such, the Court doubts whether it would be appropriate for it to take any purported signature into account when deciding the motion. Furthermore, even if the Court did take the signature form into account, Plaintiff signed the form in May 2001, nearly a year after Defendant's alleged wrongdoings began. In *O'Neil*, the form was signed before the allegedly wrongful termination.

merely a management entity, and not Plaintiff's employer, that too would indicate that Plaintiff had not contracted to arbitrate any disputes between her and DCA.

In sum, Plaintiff is bound by the arbitration clause contained in her employment agreement. She was bound by that agreement until her termination. After her termination, the record does not reflect that she assented to any new arbitration agreement. As such, she only agreed to arbitrate claims relating to controversies arising before and on February 4, 2000.

B) *Coverage of the Arbitration Agreement*

■ Having determined that Plaintiff contracted to arbitrate claims that arose prior to her termination, the Court now must determine whether her race discrimination claims are covered by that agreement. In light of both the breadth of the arbitration clause and the strong federal presumption in favor of arbitration, the Court concludes that Plaintiff's race discrimination claim is covered by the agreement. Since the Court has found that subsequent to the termination no arbitration agreement existed, it need not determine whether claims arising post-termination are arbitrable.

The arbitration clause in the employment agreement provides that any "controversies or disagreements arising out of, or relating to, this Agreement *or the breach thereof,* shall be settled by arbitration. . . ." (emphasis added). Plaintiff's race discrimination claim involves allegations against Defendant which related directly to her employment at MADA. She claims that he discriminated against her in wages; she further alleges that her termi-

nation was the result of unlawful discrimination.

The rule in the Fourth Circuit as to whether a dispute is covered by an arbitration clause has come to be known as the "significant relationship" test. *See Sutton v. Hollywood Entertainment Corp.,* 181 F.Supp.2d 504, 510 (D.Md.2002). The Court must analyze whether the dispute between the parties bears a "significant relationship" to the employment agreement. *See Long,* 248 F.3d at 317. It is clear that Plaintiff's claims based on pre-termination actions taken by Defendant and based on the termination itself bear a strong relationship with the employment agreement. The arbitration clause even makes an explicit reference to "breaches" of said agreement. As such, claims against Defendant arising prior to and on February 4, 2000 are subject to arbitration.

C) *Non–Signatory's Claim to the Arbitration Agreement*

■ Plaintiff has raised the issue as to whether Defendant, a non-signatory to the arbitration agreement between her and MADA, may avail himself of that agreement. Plaintiff argues that as a non-party to the agreement, Defendant can not draw upon the agreement to compel arbitration. Defendant counters that case law in this Circuit allows a non-signatory to assert a binding arbitration clause in certain circumstances.

Although Defendant was not a signatory to the arbitration agreement, "[w]ell-settled common law principles dictate that in an appropriate case, a non-signatory can enforce, or be bound by, an arbitration provision within a contract executed by other parties." *International Paper,* 206 F.3d at 416–17.[4] For example, a parent

---

**4.** The Court in *International Paper* noted that   because the question whether a non-signatory

company may be compelled to arbitrate based on the arbitration agreement of its subsidiary even though it was a non-signatory to the agreement if the allegations against the parent are "based on the same facts and are inherently inseparable." *J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile,* 863 F.2d 315, 320–21 (4th Cir.1988). The same result can also be based on a theory of equitable estoppel. *See id.*[5]

Although these cases provide the Court with some guidance, the issue is not as straightforward as Defendant would have the Court conclude. First, as this is a motion to dismiss, the Court can not say with certainty whether the claims against MADA and the claims against Becker are "inherently inseparable" since the Court does not even know what claims Plaintiff has against MADA. For example, in this action, Plaintiff accuses Defendant of intentional racial discrimination. If no such accusation is made against MADA, there is a question as to whether the claims are "inherently inseparable".

Second, a footnote in the *International Paper* decision gives the Court some pause. Citing to an Eleventh Circuit case, the Fourth Circuit noted that in certain instances, a non-signatory can compel a signatory to arbitrate not because of equitable estoppel but because the claims are " 'intimately founded in and intertwined with the underlying contract obligations.' " *International Paper,* 206 F.3d at 418, n.6 (quoting *McBro Planning & Dev. Co. v. Triangle Elec. Const. Co.,* 741 F.2d 342,

344 (11th Cir.1984)). The Court of Appeals hinted, however, that merely an intimate relationship between the claims and the contract obligation could not create an independent basis upon which to bind a non-signatory absent the non-signatory receiving a direct benefit from the contract. *See id.* Thus, in this case, there would be some question as to whether Defendant received any direct benefit from the employment agreement signed by Plaintiff and other MADA employees.

In any event, the Court concludes that Defendant may indeed avail himself of the arbitration clause to which he was not a signatory on another legal theory: agency. The Fourth Circuit has cited with approval to a Second Circuit case that enumerated five specific instances where non-signatories could claim the protection of an arbitration agreement. *See id.* at 417 (citing *Thomson–CSF, S.A. v. American Arbitration Ass'n,* 64 F.3d 773, 776–79 (2nd Cir. 1995)).[6] Among the basis for binding non-signatories to arbitration agreements is upon a theory of agency law. Under this theory, the agent can assume the protection of the contract which the principal has signed. In other circuits, courts have applied this principle to allow for non-signatory agents to avail themselves of the protection of their principal's agreement. *See Roby v. Lloyd's,* 996 F.2d 1353, 1360 (2nd Cir.1993)("Courts in this and other circuits have consistently held that employees or disclosed agents of an entity that is a party to an arbitration agreement are protected by that agreement."); *Pritzker v. Merrill*

---

could assert an arbitration provision did not involve questions of formation or validity, federal law principles would govern the analysis. *See id.* at 417, n.4.

**5.** The doctrine of equitable estoppel in the context of agreements to arbitrate recognizes "that a party may be estopped from asserting that the lack of his signature on a written contract precludes enforcement of the con-

tract's arbitration clause when he has consistently maintained that other provisions of the same contract should be enforced to benefit him." *International Paper,* 206 F.3d at 418.

**6.** The five examples are: (1) incorporation by reference; (2) assumption; (3) agency; (4) veil piercing/alter ego; and (5) estoppel. *See Thomson–CSF,* 64 F.3d at 776.

*Lynch,* 7 F.3d 1110, 1121 (3rd Cir.1993); *Letizia v. Prudential Bache Securities,* 802 F.2d 1185, 1187–88 (9th Cir.1986). While the Fourth Circuit has yet to explicitly so hold, its reference to the *Thomson–CSF* case leads this Court to conclude that it too would find that an agent can seek the protection of a principal's arbitration agreement and use it to compel arbitration.

Therefore, while Defendant did not sign on to the employment agreement between MADA and Plaintiff, he can use it to compel arbitration. Such a finding also has the result of preventing an unwanted result: the circumvention of valid arbitration agreements by plaintiffs. If plaintiffs could sue individual defendants, they could too easily avoid the arbitration agreements that they signed with corporate entities. *See Roby,* 996 F.2d at 1360. By allowing Defendant the protection of the MADA arbitration agreement, the Court prevents Plaintiff from circumventing arbitration by suing an individual defendant.

### D) *Disposition*

█ The Court has concluded that some of the claims asserted by Plaintiff are subject to arbitration and that Defendant may raise the employment agreement in order to compel Plaintiff to arbitrate. The Court must now determine the disposition of this civil proceeding. Courts faced with similar postures normally have two options. First, in accordance with the statute, the Court can stay the case pending arbitration. *See* 9 U.S.C. § 3; *Choice Hotels Int'l v. BSR Tropicana Resort, Inc.,* 252 F.3d 707, 712 (4th Cir.2001). Alternatively, if the Court finds that the entire claim is covered by an arbitration agreement and that no further controversies exist between the parties other than that one

claim, the Court has the discretion to dismiss the claim in its entirety. *See Adkins v. Labor Ready, Inc.,* 205 F.R.D. 460, 465 (S.D.W.Va.2001), *aff'd,* 303 F.3d 496 (4th Cir.2002); *accord Alford v. Dean Witter Reynolds Inc.,* 975 F.2d 1161, 1164 (5th Cir.1992); *Large v. Conseco Finance Servicing Corp.,* 167 F.Supp.2d 203, 207 (D.R.I.2001), *aff'd,* 292 F.3d 49 (1st Cir. 2002).

The present case does not fit neatly into either of those two categories. On the one hand, Plaintiff brought only one claim against Defendant. The Court would thus be inclined to dismiss the whole action. On the other hand, Plaintiff's claim, while being listed as only one count, involves some claims which the Court has found subject to an arbitration agreement and some claims which the Court has found have no arbitration clause attached to them. The Court concludes that the better route is to stay the litigation pending arbitration. Based on the Court's ruling, the arbitrator will be limited in his or her review to the claims that arose prior to and up until Plaintiff's termination on February 4, 2000. All other claims are not subject to arbitration and can be litigated in this forum should such an event be necessary.[7]

### IV. CONCLUSION

Plaintiff contracted to arbitrate employment-related disputes while she was under contract with MADA. After her termination, she was no longer under any such binding agreement. As such, she cannot be compelled to arbitrate claims arising after her termination. Her claims against Becker that arose prior to and including termination fall within the ambit of the arbitration clause. Defendant, although a

---

7. During the stay of the litigation, the case will be administratively closed. Upon motion of either party, the case will be re-opened after arbitration.

non-signatory to the employment contract, may use the arbitration agreement to compel Plaintiff to arbitrate those claims against him. The action will thus be STAYED pending arbitration on those claims. The rationale for staying the action, above and beyond the statutory mandate, is that it would clearly be a waste of judicial resources to litigate some claims while both of the same parties are currently in arbitration on the other claims. An Order consistent with this Opinion will follow.